BUTLER & ALFORD v. O'BRIEN, SURVIVING PARTNER.

1. A bond given by the claimant of property levied on by attachment, payable to the sheriff, instead of the plaintiff, and the condition of which is not as extensive as the statute requires, is good as a common law bond; a surety in such bond is consequently an incompetent witness for the claimant.

2. On the trial of the right of property, levied on by attachment, to which a claim has been interposed under the statute, the plaintiff need not produce any other proof of indebtedness than the attachment affords.

3. Where a creditor receives of his debtor, a note which a third person gave to the latter on the purchase of goods, if the creditor was cognizant of the consideration of the note, when he became its proprietor, or retained it as his own, after he acquired such knowledge; in neither case, will he be allowed to show that the sale of the goods was fraudulent, with the view of subjecting them to the payment of his debt.

WRIT of Error to the Circuit Court of Tallapoosa.

The defendant in error and his partner, since deceased, caused an attachment to be issued against the estate of Salem C. Garrett, returnable into the circuit court of Tallapoosa; which attachment was levied on a stock of merchandize, to which the plaintiffs in error interposed a claim, in the manner prescribed by the statute, with a view to a trial of the right of property, and executed a bond with William C. Morgan and John W. Butler, their sureties, payable to the sheriff of Tallapoosa, which bond is dated on the 20th December, 1837, conditioned to pay to the plaintiffs in attachment "all damages, which the jury, on the trial of the right of property, may assess against them, in case it should appear that such claim was interposed for the purpose of delay." At the term of the circuit court, holden in the spring of 1838, a motion was made to dismiss the claim of the plaintiffs in error, on the ground, that it was not regularly presented, across which, as noted on the motion docket, a memorandum was written as follows: "Motion discharged, on giving sufficient bond." The claimants executed a bond, bearing date the 5th of April, 1838, together with the same sureties who joined in the first, payable to the plaintiffs in attachment, conditioned to " have the goods, wares and merchandize forthcoming to answer the judgment of

the court, if the same shall be found liable to the attachment, and pay and satisfy all such costs and damages as shall be recovered for putting in the claim for delay."

A third bond is found in the transcript, bearing date the 1st day of April, 1839, payable to the sheriff of Tallapoosa, and executed by the claimants, with John W. Butler, L. P. Alford and John Morgan, as their sureties. By what authority this bond was filed in court, it does not appear.

The cause was submitted to a jury upon an issue made up to try the right of property in question, who found the same, subject to the attachment which had been levied thereon, and estimated the value of each article of merchandize separately. In addition to which, they found that the claim had been interposed for delay, and in consideration thereof, assessed the plaintiffs damages at one hundred and fifty-nine 64-100 dollars, "that being eight per cent upon the amount of the plaintiff's judgment on his attachment." On this verdict a judgment was entered condemning the property to the satisfaction of the plaintiffs attachment as well as for the recovery of the damages with costs.

On the trial, the claimants excepted to the ruling of the presiding judge. From the bill of exceptions, we extract the following as the points therein presented for the decision of this court.

1. The claimants offered William C. Morgan as a witness, who was objected to by the plaintiffs, because he was a surety of the claimants in their claim bond, which bond was the one first above recited. The claimants then produced the bond thirdly above recited, which appeared by the sheriff's indorsement thereon, to have been approved by him. There was no evidence how this bond came into court; the clerk could not tell, but did not believe it was ever received by the court. The memoranda made at the Spring term of 1838, which has been already stated, was produced, and on this state of facts, the claimant's counsel asked the court to permit the witness to testify, but the court decided that he was incompetent; and thereupon the claimants excepted.

2. The attachment and indorsement thereon of the levy were produced, but no judgment or other proof of the plaintiffs demand was shown. It was shown, that at the time of the levy, the goods were in possession of the claimants, and that the sheriff had summoned the claimants to answer as garnishees. Upon this state of facts, the claimants counsel asked the court to charge

the jury, that the issuance of the attachment and levy, was not sufficient evidence of an indebtedness by the defendant in attachment to authorise the plaintiffs to recover. This charge was refused, and the court charged the jury, that the attachment and levy was sufficient to authorise the trial of the right of property; and thereupon the claimants excepted.

3. The claimants then proved, that a note executed by them to the defendant in attachment, in part payment of the goods levied on, was, after the issuance and levy of the attachment received by one of the plaintiffs in attachment, in part payment of their debt against him, and that it was subsequently transferred by the plaintiffs to one Thornton, as collateral security for a debt due by them to him. It was further proved, that the makers of the note were insolvent. Upon this evidence, the claimants counsel asked the court to charge the jury; *first*, if they were satisfied from the evidence, that the plaintiffs received the note of claimants which they had given to the defendant, in part payment for the goods in controversy, in payment of the note of the defendant, due to them for the same goods, with a knowledge of the circumstances under which the claimants made the note to the defendant, that the plaintiffs must be considered as having recognized the sale of the goods, made by the defendant to the claimants, and were estopped from insisting upon its invalidity on the ground of fraud. *Second*, if the jury believed from the evidence, that the plaintiffs received from the defendant in attachment a note made by the claimants for the goods in controversy, not knowing what was its consideration, but after being informed of it, retained the note without any offer to return it, then their recognition of the contract between the claimants and defendant in attachment will be presumed, and they, the plaintiffs, cannot be allowed to show that it is fraudulent. These charges the court refused to give, but charged the jury, that in determining whether the plaintiffs, in receiving the note in question from the defendant intended to affirm the contract of sale, between the claimants and defendant, they might consider the taking of the note by the plaintiffs from the defendant, also the retaining it by the plaintiffs with other circumstances of the case, and also might inquire whether the plaintiffs, when they thus received the note in question, intended to affirm the contract between the claimants and defendant; or whether the taking or retaining the same, was for the better secu-

rity of their debt. To the refusal to charge as asked, and to the charge as given, the ⸠claimants, by their counsel, excepted.

. GUNN and BELSER, for the defendants in error. Morgan was a competent witness, and should have been permitted to give evidence for the claimants. The bond first executed by the claimants, and to which the witnesses name appears, is not good as a statute bond, because it does not conform to the act of 1828. [Aik. Dig. 169, 171: 1 Ala. Rep. N. S. 611; 2 Id. 203, 378.] It is not good as a common law bond, because taken, without legal authority, to the sheriff instead of the plaintiff in attachment. [2 Ala. Rep. N. S. 144, 204.]

If the last bond to the sheriff, is to be regarded as regularly in court, it is clear that it superseded the first, and the witnesses competency is unquestionable.

The plaintiffs in attachment should have established their debt by proof, as they had not recovered a judgment; otherwise they might defeat the contract between the claimants and defendant without making out an indebtedness to them, and this, although the contract, even if fraudulent, would be valid between all persons but creditors. [See 3 Mason's Rep. 378.]

If the plaintiffs in attachment received of the defendant in part . payment of a demand against him, a note which the claimants had made to the latter in payment of the goods in controversy, they, (plaintiffs) must be taken to have affirmed the sale, if they acted with a knowledge of the facts. And the several charges prayed upon this point, should have been given to the jury, and that given is erroneous. [2 Stew't Rep. 479; 5 East's Rep. 449; 4 Mass. Rep. 502; 12 Pick. Rep. 307; 4 Greenl. Rep. 306; 4 Maine Rep. 364; 1 Hill's Rep. 305.]

The judgment is irregular in not showing the amount of the judgment in attachment, if any has been rendered; and for any thing appearing it may be less than the value of the goods condemned to its satisfaction.

STONE, for the defendant. Even admitting that the first bond was taken pursuant to the statute of 1828, yet it is good at common law, and this will be sufficient to disqualify Morgan as a witness. [2 Stew't Rep. 509; 2 Porter's Rep. 493; 6 Id. 414; 1 Ala. Rep. N. S. 316; 3 Id. 593.] The bond dated in 1838, is in

proper form, is executed by Morgan, and should be considered as regularly in court.

The bill of exceptions should show the pertinency of the charges asked and refused. [2 Stew't Rep. 38; 1 Stew't & P. Rep. 71; 2 Porter's Rep. 29; 1 Ala. Rep. N. S. 517; Id. 582.]

COLLIER, C. J.—Although the transcript contains a bond in due form, executed by the claimants and William C. Morgan, yet as this bond was not brought to the view of the court, when the latter was offered as a witness, we must consider the question of his competency upon the evidence of interest which was then shown to the court. In respect to the bond which was found in the file, bearing date in 1839, it must be placed entirely out of view, as it contains no intrinsic evidence of its having been sanctioned by the court, and the statement of the clerk affords a strong presumption that the reverse is true. Taking the bond then, which was executed simultaneously with the assertion of a claim of property by the plaintiffs in error, as the only source to which he can refer to ascertain the relation in which Morgan stands to the parties who introduced him; the question is, had he an interest so direct in the result of the suit as to render him incompetent.

By the eleventh section of the attachment act of 1833, it is provided that property levied on by that process may be claimed, and bond given to try the right of the same as in other cases, on which the same proceedings may be had as in trials of the right of property taken by virtue of a *fieri facias*. And the bond for the trial of the right of property shall be lodged with the clerk, &c.; and should it become forfeited, the fact shall be indorsed thereon, and an execution issue against all the obligors therein, &c. The statute of 1812, provided for the trial of the right of property levied on by execution, where it was claimed by a third person, and required the claimant to execute two bonds; one of which was to be conditioned as is the first bond executed by the claimant in this case, and payable to the sheriff; the other was conditioned for the forthcoming of the property. The act of 1828 modified the law in this respect, and requires but one bond, embodying the conditions of both the others, which is payable to the plaintiff.

It is conceded that the bond brought to our notice does not conform to the statute, but is variant in being made payable to the

sheriff, and conditioned to perform but one of the obligations re-
quired.   There is then no pretence for regarding it as a statute
bond, and the question is, can it be enforced at common law.   In
Hooe v. Tebbs, [1 Mumf. Rep. 500,] it was held, that a prison
bounds bond, which was made payable to the plaintiff instead of
the sheriff, and consequently void as a statute obligation, was
notwithstanding, good at common law.   And in Morse v. Hods-
don, et al. [5 Mass. Rep. 314,] the plaintiff in replevin gave his
bond, with security, conditioned to prosecute his suit to final judg-
ment, and recover the said goods; else the bond to be in full
force.   The condition prescribed by statute was, that the plain-
tiff should prosecute, and also make return, and pay damages, if
judgment be against him.   In an action of debt upon this bond,
it was determined that as it was voluntarily given, and the sta-
tute entitled the obligors to relief against the penalty, on the pay-
ment of the proper damages, they were no more prejudiced than
if the condition had conformed to the law ; and not being declar-
ed void either by common law, or statute, the bond was good.
[See also Justices v. Smith, 2 J. J. Marsh. Rep. 473 ; Hoy v. Ro-
gers, 4 Monr. Rep. 225 ; Cobb v. Curtis, 4 Litt. Rep.]    We
might add many citations, tending to the same conclusion, but
we will content ourselves with referring to the case of Sewall v.
Franklin, et al. [2 Porter's Rep. 493] in which the court, after no-
ticing many authorities, says, " it .appears that bonds taken by
civil officers, and in relation to judicial proceedings, though with-
out the authority of our statute, (like bonds between individuals
under other circumstances,) if they appear to have been given on
valid and sufficient consideration, such as is neither illegal or im-
moral, may be good as common law bonds."

From these authorities it appears, that the bond in question, if
the condition is forfeited, may be put in suit, and a recovery had
against all the obligors.   It is an undertaking on their part to pay
all damages and costs which may be adjudged against the claim-
ants ; and each of them is interested in preventing such a judg-
ment.   The interest is not indirect and remote, but is direct, and
an immediate consequence of a verdict and judgment adjudging
the property subject to the plaintiff's attachment.   Morgan then,
according to the familiar rule, which declares one an incompetent
witness who is interested in the event of the suit, was properly
excluded by the circuit court.

41

2. It has been repeatedly held, where a third person claims property levied on by execution, and executes a bond for the trial of the right, that he shall not be permitted to object to the regularity of the judgment and execution, and that the plaintiff shall not be required to produce any evidence of the justice of his demand, other than the execution affords. We think the same rule must apply, where instead of an execution, the property is seised by an attachment. The only question to be litigated is, whether the goods claimed really belongs to the claimant or not, as against the plaintiff, a creditor; for the purposes of this controversy, the plaintiff must be regarded as a creditor without the production of proof of indebtedness. The eleventh section of the attachment law, in providing for the trial of the right of property, and directing the same proceedings to be had as where a claim is interposed upon the levy of a *fieri facias*, together with the decisions which have been made touching the nature of such a controversy seem to us to show, not only that such evidence is unnecessary, but irregular.

3. It may be considered as a settled principle of law, that a transaction fraudulent, and consequently liable to be defeated by those who are prejudiced by it, may acquire validity by their subsequent confirmation with a knowledge of the facts. The approval need not be direct and express, but it may be implied from the manner of the dealing of the parties. In the present case, if the plaintiffs received of the defendant in part payment of the debt they are seeking to recover, a note which the claimants gave the latter for the goods in controversy, having at the time a knowledge of the consideration, they would be held to have approved the sale. The bill of exceptions does not recite any express proof of knowledge of consideration, but it states that the plaintiffs, after the levy of their attachment, received by the defendant in part payment of their debt against him, a note which the defendant had received of the claimants for the goods in controversy. The court when called on to charge that the plaintiffs must be held to have recognized the sale as valid, if they knew for what the note was given, does not treat the prayer as asking an instruction upon an abstract point. And although the evidence of knowledge by the plaintiffs is not as full as it could perhaps be desired, yet we think it such as warranted the charge prayed on this point. It cannot be supposed that every person who becomes the assignee of a

note or other security for money, *eo instanti*, is informed of its consideration ; but in the case before us, the plaintiffs acquired the note, after their attachment was levied upon the goods, and the claimants had asserted the right to them as purchasers of the defendant.   These are facts upon which the jury might inquire of the plaintiffs knowledge of the inducement to give the note.

While the plaintiffs could not, consistently with reason, be considered as affirming the sale, unless they knew that the note was induced thereby, so on the other hand it would be exceedingly unjust if they possessed such knowledge, to allow them to appropriate the note to their own purposes, and also condemn the goods to pay the residue of their demand.   If the sale of the goods was fraudulent, and intended to delay, hinder, &c. creditors, &c. the plaintiffs would subject them to their demand, unless they have impliedly sanctioned it ; and the note would be recoverable in any court, as the law does not allow the fraudulent vendee to urge his own fraud in such a case.

Although the plaintiffs may not have been apprised of the consideration of the note at the time they received it, yet if they retained it as their own, and used it after they acquired such knowledge, the same consequences result as if they acted upon previous information.   The question of the recognition of the sale does not depend upon the plaintiffs intention not manifested to others, but is a question of law deducible from the facts, which the jury may ascertain.   From this view it results, that the circuit court erred in the refusal to charge the jury as requested, and in the charge given.

The judgment is consequently reversed, and the cause remanded.