# Robinson *v.* Pebworth.

*Bill in Equity pursuing Trust Funds invested in Land, and to have the Land sold for Payment thereof.*

1. *Devastavit by guardian; trustee in invitum.*—Where a guardian, having purchased a lot of land, partly for cash, and partly on credit, used his ward's money in making the cash payment, taking the title in his own name, and securing the unpaid purchase-money by mortgage on the lot,—*held*, that in thus using the ward's money, he committed a *devastavit;* and that his vendor, having received the money with a knowledge of its trust character, thereby became a trustee *in invitum.*

2. *When husband acts as agent for his wife.*—The deed to the guardian having been executed by husband and wife, the latter being a free dealer, in usual form, and the mortgage taken in the name of the husband, reciting the debt as due to him, while the land belonged to the wife, but the fact of her ownership does not appear on the face of the papers, nor was otherwise made known,—*held* that the husband, in making the sale, acted as the agent of his wife, and that she ratified the agency by joining in the execution of the deed.

3. *When notice to the husband is notice to the wife.*—In such case, after a sale of the lot under a power contained in the mortgage, at which it was bid off by, and conveyed to a third party, who acted merely for the wife, and who subsequently executed a conveyance to her, and after a recovery of the lot by the wife in an action of ejectment, on bill filed by the ward, seeking to subject the lot to sale for the payment of the money which was paid to the husband by the guardian, it was further held that notice to the husband was notice to the wife, and that she could claim no higher rights, or greater exemptions, than her husband could have claimed, if the lot had been his property.

4. *When party not a bona fide purchaser.*—The lot having been the property of the wife, and the debt for the unpaid purchase-money, though

payable on its face to the husband, having been in fact due to her, when she, through another, made the purchase, she simply bought mortgaged property in payment of her debt; and hence, being charged with notice of the ward's prior equity, she did not thereby become a *bona fide* purchaser.

5. *Same.*—But if the lot had been the property of the husband, and the purchase-money secured by the mortgage had been due to him, the testimony in reference to the consideration of the wife's purchase, merely showing that it was a "large amount" which the husband owed her, is wholly insufficient to establish a valuable consideration parted with by her, or even to establish a *bona fide* indebtedness from the husband to her, so as to affect the rights of creditors, or third parties.

6. *When plea of res adjudicata not sustained by the proof.*—The testimony introduced in support of a plea of *res adjudicata,* interposed as a defense to the bill in this case, is held to be "entirely too meagre to show that the same matters were in issue, and a final decree pronounced on their sufficiency as a ground of relief."

7. *When ward not estopped from pursuing funds invested by the guardian, by proceedings on final settlement of the guardianship.*—Where a guardian, having purchased a lot of land, partly for cash, and partly on a credit, used his ward's funds in making the cash payment, taking the title in his own name, and securing the unpaid purchase-money by mortgage on the lot, which was afterwards foreclosed under a power of sale contained therein, and purchased by one charged with notice of the trust character of the funds used in making the cash payment, the fact that the guardian on final settlement of his guardianship did not receive a credit for the funds so used, but a decree was rendered therefor against him and his sureties, which had not been satisfied, does not estop the ward from pursuing the funds into the lot in which they were invested, and from subjecting the lot to sale for the payment thereof.

8. *Same; estoppel a reasonable doctrine.*—"Estoppel in such cases is a reasonable doctrine, and simply means that you shall not take the fruits of an illegal transaction, and afterwards set the transaction aside as illegal—in other words, that you shall not be heard to claim both under and against the same title."

APPEAL from Montgomery Chancery Court.

Heard before Hon. JNO. A. FOSTER.

In 1871, $1,400 was paid into the Probate Court of Montgomery county, belonging to Samuel M., William D., Thomas H. and Mary F. Pebworth, who were then minors, without guardian. Afterwards, in May, 1871, Mrs. Frances A. Pebworth, the mother of said minors, was appointed their guardian by said court, and, after qualifying as such by executing bonds with Patrick Robinson and Robert H. Knox as her sureties thereon, she was paid said money. Mrs. Pebworth and Knox were then insolvent, and have since continued to be so. On 20th May, 1871, Mrs. Pebworth purchased from Patrick Robinson an improved lot in the city of Montgomery for $1,500, and he and his wife, Margaret Robinson, executed to her a deed thereto. This deed was made to "Frances A. Pebworth, guardian" of said minors, naming them. Of the purchase-money $1,200 was paid in cash by Mrs. Pebworth to Mr. Robinson, and for the balance she made her note, payable to him twelve months after date, with interest. To secure this note she also, on the

16

[Robinson v. Pebworth.]

same day, executed to him a mortgage on the lot which she had purchased, with a power of sale. In this mortgage, in the granting clause, she styles herself guardian of said minors, and it is recited therein that she executed the same "by virtue of an order this day granted me to this effect by the Probate Court." The substance or purport of this order is not further stated in the mortgage, nor is it set out in the record. In fact, this lot was at the time of these transactions the property of Mrs. Robinson, it having been conveyed to her in 1854, by one Samuel Murrell; but the fact of her ownership does not appear either from the deed or mortgage above mentioned. In May, 1877, the mortgage was foreclosed by a sale under the power contained therein, and at the sale a third party bid in the property for an amount sufficient to pay the mortgage debt and expenses of sale; received a conveyance of the lot executed by Robinson, and afterwards executed a deed conveying the lot to Mrs. Robinson. Afterwards Mrs. Robinson commenced a suit in ejectment against Mrs. Pebworth for the possession of the lot, and in 1878, recovered a judgment therefor, no defense having been made to the suit. Under a writ issued on this judgment Mrs. Robinson was put into possession of the lot, and she was in possession thereof when this suit was commenced.

The bill in this cause was filed on 6th February, 1879, by the above named wards, two of whom had attained their majority, against Patrick Robinson and his wife, Mrs. Pebworth, and the purchaser at the mortgage sale, in which it is charged that Robinson fraudulently colluded with Mrs. Pebworth to obtain possession of their money; that the latter was appointed their guardian in pursuance of an agreement between Robinson and Mrs. Pebworth to the effect, that if she would agree to purchase said lot from him with complainants' money, at the price for, and on the terms at which, it was purchased, as above stated, he would become her bondsman as guardian of complainants; that in further pursuance of the agreement, the purchase was made, the money paid, and the deed and mortgage executed; that the price paid for the lot was greatly in excess of its true value; and that the purchaser at the mortgage sale, while ostensibly buying the lot for himself, in fact bid it in for Mrs. Robinson. The prayer of the bill is for an account, for a lien on the lot, for a sale thereof for the payment of what may be ascertained to be due the complainants, growing out of their guardian's *devastavit*, and for general relief. The bill waived answers under oath by all the defendants except Mrs. Pebworth, who was required to answer under oath.

Mrs. Pebworth answered under oath admitting substantially the agreement between herself and Robinson, as set up in the bill, but denying any intentional fraud on her part. The other

defendants filed a "joint and separate" answer, denying the alleged agreement and the fraud charged in the bill, and that Robinson had in any way procured Mrs. Pebworth's appointment as guardian of complainants; and averring that the sale of the lot and the other transactions connected with the lot following the sale, were had and made in good faith, and that the lot was worth the price at which Mrs. Pebworth bought it. Other defenses are set up in their answer, which are sufficiently indicated in the opinion.

Touching the plea of *res adjudicata* incorporated in the joint answer of Robinson and others, mentioned in the opinion, the evidence introduced at the hearing showed that in 1873, the exact time not stated, the complainants in the bill in this cause, all of whom were then minors, suing by their next friend, filed a bill in said court against Patrick Robinson and Mrs. Pebworth; and that the bill and all the other papers belonging to the file in that cause had been lost or mislaid. It was shown by sworn copies of the docket and minute entries in that cause, that Mrs. Pebworth answered the bill on 4th December, 1873, and on the 8th of that month Patrick Robinson demurred to the bill; that on 24th January, 1874, a decree was entered sustaining Robinson's demurrer, and allowing forty days within which to amend, and that at the November term, 1875, the cause was dismissed at the costs of the complainants' next friend. The only proof offered of the purpose and contents of the bill, and of the other pleadings in the cause, was the testimony of Patrick Robinson, who, after showing the filing of the bill and his demurrer thereto, and the identity of the parties, testified as follows: "I had advertised said real estate for sale under said mortgage, and complainants, by their next friend, Daniel H. Workman, filed said bill against me to restrain the sale of said realty under the mortgage. The bill alleged substantially that the money with which the property was bought belonged to the minor heirs, and that said Frances A. Pebworth, in order to induce me to become surety on her official bond as guardian, agreed to invest $1,200 of their said money in said realty, and that it was in consideration of said agreement that I became her surety. The bill alleged collusion and fraud between me and Frances A. Pebworth, and made her a party defendant to said bill. Mrs. Pebworth answered the bill, but I, through my attorney, demurred, but I do not know upon what grounds. The demurrer was sustained and the bill dismissed. This is, according to my best recollection, the substance of the subject-matter of said suit, and the same matters are involved in this suit. The same relief was prayed in both cases."

It was, by written agreement of the parties, admitted that Mrs. Pebworth made final settlements of her guardianships of com-

[Robinson v. Pebworth.]

plainants in the Probate Court on 28th February, 1874, and thereon decrees were rendered against her in favor of each of her wards for $323.16; that on said settlements no credit was allowed her "for the money alleged to have been invested in the land in controversy;" that the complainants and the guardian *ad litem* who represented them on said settlements, "had full knowledge of said purchase of the land in controversy, and of the manner and means of said purchase;" that decrees were also duly rendered for said amounts against Robert H. Knox, and Patrick Robinson, as her sureties, but no executions had issued either against the guardian or her sureties; and that said decrees still remained of full force, and were unsatisfied. The other facts necessary to an understanding of the opinion are sufficiently stated therein.

On the hearing, had on pleadings and proof, the chancellor, being of opinion that the complainants were entitled to relief, entered a decree of reference as to the amount due them; and, at a subsequent day of the same term, on the report of the register, ascertaining that "the amount, including principal and interest to date, of the funds in the hands of the defendant, Frances A. Pebworth, which belonged to the complainants, in this cause, and which she paid to the defendant, Patrick Robinson, on the purchase of the lands mentioned in this case, is $2,153.86," a decree was entered, ordering a sale of the lot for the payment of said amount.

The above mentioned decrees are here assigned as error.

RICE & WILEY, for appellants.

JNO. GINDRAT WINTER and GUNTER & BLAKEY, *contra*.

STONE, J.—The testimony as to whose money—$1,200— was employed in making the first or cash payment in the purchase of the lot, all points in one direction, and shows conclusively that it was the money of the complainants, all of whom were then minors, some of very tender years. So, we have no difficulty in reaching the conclusion that the chancellor found, and rightfully found, that fact in favor of complainants.

The next inquiry is, did Robinson, when he received the money, know it was the property of complainants. Frances A. Pebworth, from whom Robinson received the money, mother of complainants, was then their guardian, and Robinson was one of her sureties. The testimony on this question is not entirely in harmony, but we think the weight of it is decidedly in favor of the proposition, that in negotiating and effecting the sale of the lot, Robinson was informed and knew that the money of the wards was to be used in making the cash payment.

There is a preponderance of the oral testimony on that side; and if such was not the understanding, why was the deed made to Mrs. Pebworth, styling her guardian, and why did she sign the mortgage in the same way? The mortgage on its face shows that it was given "by virtue of an order this day granted me to this effect by the Probate Court." Guardians, it is true, may invest the money of their wards in real estate; but the title must be taken in the name of the ward.—Code, §§ 2788–9. And under certain conditions, the Probate Court may direct the sale of the ward's property for re-investment.—*Ib.* 2785. There is nothing to show this purchase was made under either of these provisions; and the title was made, not to the wards, but to Mrs. Pebworth. The Probate Court had no power to authorize the guardian to give a mortgage. Why should this clause have been inserted in the mortgage, if Mrs. Pebworth was purchasing in her own right, and with her own money? In his testimony Mr. Robinson says: "All I can recollect in reference to the order of the Probate Court referred to in said mortgage is, that I was unwilling to sell said realty unless I was protected in the sale thereof. . . . . She said that she wanted to invest the money for the benefit of the heirs—the particulars of the conversation, however, I can not recollect. She said she would get an order of the Probate Court to protect me fully." We may again ask, why all this, if Mrs. Pebworth was not dealing —confessedly dealing—with trust funds? We can not doubt that when Mr. Robinson negotiated and concluded the terms of the sale, he had notice and knowledge that the moneys of the complainant-wards were to be, and were used in the purchase.

In thus using the trust funds confided to her, Mrs. Pebworth committed a *devastavit;* and when Robinson received it, knowing its trust character, he constituted himself a trustee *in invitum* of that fund.—*Lee v. Lee*, 67 Ala. 406.

The lot in controversy was originally the property of Mrs. Robinson. The title deed is in evidence, and it shows that the title was in her. The testimony is that she was a free dealer. But there is nothing in the proof of the negotiation, nor in the title papers executed, which tends to show the lot was sold as the property of Mrs. Robinson. Neither the deed nor mortgage mentions who is the owner. The deed is in usual form by husband and wife, and the mortgage, reciting a debt to Patrick Robinson, conveys the lot back to him, to secure its payment. But we need not consider the effect of this. The most that can be made of it is, that, in making the sale, Robinson acted as the agent of his wife. She ratified the agency, by joining in the execution of the deed to Mrs. Pebworth. The testimony fails to show any other act of hers, or any word spoken by her, throughout not only the sale, but the foreclosure pro-

[Robinson v. Pebworth.]

ceedings and conveyances, afterwards had and performed.    In such case notice to the agent is notice to the principal; and Mrs. Robinson can claim no higher rights or greater exemptions, than her husband could claim, if the sale had been made by him of his own property.— *White v. King*, 53 Ala. 162; *Le Neve v. LeNeve*, 3 Atk. 646; *Clark v. Fuller*, 39 Conn. 238; Wade on Notice, §679; *Bank of Milford v. Town of Milford*, 36 Conn. 93; *The Distilled Spirits*, 11 Wall. 356.

It is claimed, in the next place, that when Mrs. Robinson purchased at the foreclosure sale, she was a *bona fide* purchaser without notice, and, therefore, she acquired a good title, notwithstanding any equity the complainants may have had; it not being shown she had actual notice of such equity.    There are several answers to this argument.    In the first place, the lot had been her property, and the debt for the unpaid purchase-money, although on its face payable to her husband, was in fact due to her.    When she, through another, made the purchase, she simply bought mortgaged property, in payment of a debt due to her.    She parted with no new consideration, for she neither paid, nor ought to have paid any thing on her purchase.    Such purchase would give Robinson no right to claim a credit on any debt he might owe to Mrs. Robinson, for the purchase-money was not due to him, but to her.    A mortgagee, charged with notice of a prior equity, can not become a *bona fide* purchaser, by buying the mortgaged property at a foreclosure sale made for his benefit.

But if the purchase-money had been due to Patrick Robinson, the testimony in this case is insufficient to establish Mrs. Robinson's claim of *bona fide* purchase without notice.    In *Loeb v. Peters*, 63 Ala. 243, the consideration of the purchase was a credit for the amount on a pre existing indebtedness from the seller to the buyer, by account.    We held that to constitute a purchase, so as, in the absence of notice, to cut off equities, something valuable must be parted with, or some fixed liability incurred; something advanced, given up, or lost on the part of the transferee.    We held the defense in that case insufficient.

The only evidence bearing on this question in this case is that of Patrick Robinson, as follows: "I sold the property at mortgage sale to ——  —— for about $450.    He acted for Mrs. Margaret Robinson, my wife, to whom he conveyed said property.    I owed my wife a large amount, and this was the consideration I received for said deed to ———, and of the deed from —— —— to Mrs. Robinson.    There was no money or checks used."    This is wholly insufficient to establish a valuable consideration parted with, or even to establish a *bona fide* indebtedness from Mr. Robinson to his wife, so as to affect the

rights of creditors, or third parties.—*Hubbard v. Allen*, 59 Ala. 283.

There is a plea of *res adjudicata* interposed as a defense in this case. The testimony is entirely too meagre to show that the same matters were in issue, and a final decree pronounced on their sufficiency as a ground of relief.—*Shorter v. Sheppard*, 33 Ala. 648; *Smith v. Wert*, 64 Ala. 34; *McBryde v. Rhodes*, 69 Ala. 133.

The defendant, by an amendment to the answer, sought to obtain a recoupment for the value of the rents of the lot, while it was occupied by Mrs. Pebworth. It is a sufficient answer to this, that the record contains no testimony whatever of the value of the rents, and, on the reference before the register, the defendants offered no testimony on any question. And the record shows no exceptions filed to the report of the register. This question is not raised by any ruling of the court below.

It is contended for appellant—defendant below—that by electing to charge, and charging Mrs. Pebworth, the guardian, with the entire sum of money received by her as guardian, the complainants must be held to have abandoned the right to pursue the money into the lot in which it was invested. It should be borne in mind, that in this case Robinson, and through him his principal, Mrs. Robinson, if she received the money, stand charged *in invitum* with the duty of accounting for the trust fund. Fixing a liability on the true guardian, Mrs. Pebworth, was a condition precedent to the right to trace that fund into property it may have been invested in; for, if Mrs. Pebworth committed no *devastavit*, then no one can be charged as a trustee *in invitum*. The effect of the ascertained facts in this case is, to fix a liability alike on the legal guardian, and on any other who received the money, charged with notice of its trust character and misuse; and the pursuit of it against one, before satisfaction is obtained, opposes no obstacle to its prosecution against another, or against property, liable for its payment. *Thames v. Herbert*, 61 Ala. 340; *Lee v. Lee*, 67 Ala. 406. Estoppel in such cases is a reasonable doctrine, and simply means that you shall not take the fruits of an illegal transaction, and afterwards set the transaction aside as illegal. In other words, that you shall not be heard to claim both under and against the same title.—*Butler v. O'Brien*, 5 Ala. 316; *Morris v. Hall*, 41 Ala. 510; *McReynolds v. Jones*, 30 Ala. 101.

If there is any implication in the case of *White v. Cozart* (not reported), which opposes the views above, it was unnecessary and is unsound. That case went off on the authority of *Preston v. McMillan*, 58 Ala. 84.

Affirmed.