Isidor Wormser, Jr., Appellant, v. Metropolitan Street
     Railway Company et al., Respondents.

Stockholder's Action — Stockholder Cannot Complain of
Alleged Ultra Vires Acts After He Has Taken Benefits There-
under.   Where the objection to the acts or plans of a corporation is that
they are *ultra vires*, without being either *mala prohibita* or *mala in se*, a
stockholder cannot maintain an equitable action in his own behalf, based
on such objection, to restrain the corporation from carrying out such
acts, or plans, and to have the same set aside as illegal and void, where
he himself, with knowledge of the character of the acts, has acquired
and accepted pecuniary benefits thereunder ; and such a defense is avail-
able notwithstanding the fact that the plaintiff did not receive such
pecuniary benefits until after the commencement of the action.

*Wormser.* v. *Metropolitan St. Ry. Co.*, 98 App. Div. 29, affirmed.

(Argued January 16, 1906; decided February 13, 1906.)

Appeal from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered
November 28, 1904, affirming a judgment in favor of defend-
ants entered upon a dismissal of the complaint by the court
on trial at Special Term.

In February, 1902, the president of the Metropolitan Street
Railway Company communicated in writing to the stock-
holders of that corporation a plan for providing money
(approximately $23,000,000) to pay its unfunded debt incurred
in the purchase of stock of the Third Avenue Railroad Com-
pany and to defray the expense of extending its electrical system
to eighty miles of railroad lines still operated by horsepower.
That communication stated the plan or proposition as follows :
A corporation known as the Metropolitan Securities Com-
pany had been organized under the laws of New York, with
a capital stock of $30,000,000, all of which had been under-
written at par by Messrs. Kuhn, Loeb & Co., conditioned
upon the ratification of the lease hereinafter mentioned.

The Metropolitan Securities Company had acquired all the
outstanding capital and stock and other securities of the
Interurban Street Railway Company, a corporation with an

authorized capital stock of $20,000,000, owning and control-
ling franchises for the construction and operation of street
railroads on an extensive mileage in the borough of The Bronx
and adjacent territory. An agreement had been entered into
between the Metropolitan Securities and the Interurban Street
Railway Company, whereby the Securities Company was to
pay into the treasury of the Interurban Company at least
$23,000,000 in cash, receiving in return stock of the Inter-
urban Company at par and interest-bearing four per cent
debentures.

An agreement or lease had been entered into, subject to the
approval of the stockholders, between the Metropolitan Street
Railway Company as lessor and the Interurban Street Rail-
way Company as lessee, whereby, among other things, the
lessee agreed (1) to assume the fixed charges of the Metropoli-
tan Street Railway Company and unconditionally guarantee
seven per cent per annum upon the entire amount of its
capital stock, payable quarterly ; and (2) to pay $23,000,000
into the treasury of the Metropolitan Street Railway Com-
pany in return for the securities which should be liberated by
the payment of the unfunded debt, and other almost entirely
unproductive assets, said sum of money to be expended in
liquidating the unfunded debt and in completing the electri-
cal equipment of the Metropolitan system, and to be paid as
required for those purposes.

As a part of the proposed arrangement, the stockholders of
the Metropolitan Street Railway Company were to be accorded
the privilege of subscribing at par for an amount of the
stock of the Metropolitan Securities Company equal to forty-
five per cent of the par value of the capital stock of the
Metropolitan Street Railway Company; that is to say, they
were to be allowed to subscribe for $23,400,000 of such stock
out of the total capital of $30,000,000.

It was also proposed, in connection with the foregoing plan,
that the Metropolitan Street Railway Company should create
a refunding mortgage, the details of which arrangement it is
unnecessary to state, as they are not material here.

The said communication of the president of the Metropolitan Street Railway Company also stated, as was the fact, that a meeting of the stockholders had been called for March 20th, 1902, to act upon the agreement or lease with the Interurban Street Railway Company, and to authorize the proposed refunding mortgage.

At a meeting of the stockholders of the Metropolitan Street Railway Company the lease and plan were assented to by a large majority of the stockholders, and thereafter ninety-nine per cent of all the stockholders, including those who voted at the meeting, acquiesced in the arrangement which was thereafter carried out.

The present suit is an action of equitable nature, brought by a stockholder of the Metropolitan Street Railway Company on behalf of himself and all other stockholders of the corporation similarly situated who may elect to come in, to enjoin the Metropolitan Street Railway Company and the Interurban Street Railway Company, their officers and agents, from carrying out the said lease, plan or arrangement, and to have the same set aside as illegal and void. The complaint attacks the scheme as fraudulent in fact, and assigns four specifications of fraud as follows: (1) That the proposed lease is fraudulent because it limits the rent to seven per cent on the Metropolitan stock, while the actual earnings of the Metropolitan Company are alleged to exceed seven per cent, and will in the near future, as the plaintiff believes, exceed ten per cent; (2) that the Interurban Company has no sufficient property to secure the payment of the seven per cent guaranteed by it, nor does it possess any property or means from which said rental can be paid; (3) that the obligations of the Metropolitan Company to the citizens of the borough of Manhattan for conveying passengers therein cannot legally be devolved upon the Interurban Company; and (4) that the privilege offered to the stockholders of the Metropolitan Street Railway Company to subscribe to the stock of the Metropolitan Securities Company is in effect a bribe.

At the time of the commencement of this suit the plaintiff

owned a thousand shares of the stock of the Metropolitan Street Railway Company. Before the answer was interposed he exercised the option, conferred upon the Metropolitan Railway stockholders by the aforesaid plan, of subscribing to the capital stock of the Metropolitan Securities Company in respect of 885 of his shares, and sold his option or privilege to third parties, receiving therefor over $5,000.

The answers of the defendants denied all allegations of fraud and set up the exercise of this option by the plaintiff as a separate defense. No other stockholder joined with the plaintiff in the prosecution of the suit. Upon the trial of the case at Special Term judgment was rendered dismissing the complaint upon the merits, and findings were made which negative all charges of actual fraud. The judgment of the Special Term was unanimously affirmed by the Appellate Division.

*Francis K. Pendleton* and *Albert Stickney* for appellant. The right to rescission is not barred by the fact that the plaintiff and other objecting stockholders availed themselves of the privilege of subscription to the stock of the Securities Company, such subscription having been made after the commencement of this action without full knowledge of the facts constituting the fraud herein complained of, and being made under compulsion for the purpose of preserving their right to the revenues of their own properties. Moreover, plaintiff never exercised such privilege as to the stock standing in his individual name. (Bigelow on Estoppel [5th ed.], 686; *Potter* v. *Brown*, 50 Mich. 436; *Cincinnati* v. *Cameron*, 33 Ohio St. 336; *Nye* v. *Swan*, 49 Minn. 431; *Merritt* v. *Bissell*, 155 N. Y. 396; *Boerum* v. *Schenck*, 41 N. Y. 182; *Ayres* v. *Probasco*, 14 Kan. 175.)

*Charles F. Brown, Paul D. Cravath* and *William D. Guthrie* for respondents. The plaintiff, having accepted the benefits of the plan by availing himself of the privilege of subscribing to the stock of the Metropolitan Securities Com-

pany, is now precluded from attacking it.  (*I. C. Co.* v. *Lamont*, 155 U. S. 303; *Towers* v. *A. T. Co.*, L. R. [1 Ch. 1904] 558; *Post* v. *B. V. P. & E. Co.*, 84 Fed. Rep. 371; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 125 N. Y. 263; *McNab* v. *McN. & H. Mfg. Co.*, 62 Hun, 18; *Matter of Peaslee*, 73 Hun, 113; *Clearwater* v. *Meredith*, 1 Wall. 25; *Straus* v. *A. P. Assn.*, 45 Misc. Rep. 251; *Lyon* v. *Brooks*, 2 Edw. Ch. 110; *Carpenter* v. *Bell*, 1 Robt. 711, 716; *Turner* v. *Robinson*, 1 S. & S. 3.)

Willard Bartlett, J.   Where the objection to the acts of a corporation is that they are *ultra vires*, without being either *mala prohibita* or *mala in se*, a stockholder cannot maintain an action, in his own behalf based on such objection, where he himself, with knowledge of the character of the acts, has acquired and accepted pecuniary benefits thereunder. Whether his conduct in so doing constitutes an estoppel in the strict sense of that term, or a quasi-estoppel, as Mr. Bigelow puts it (Bigelow on Estoppel [4th ed.], chap. XIX), or be denominated merely an acquiescence or an election, or the assumption of a position inconsistent with an attack, makes no essential difference here.   The point is, that the seeking and acceptance of a substantial benefit which would be unavailable to the stockholders except as a result of the acts which he would attack as *ultra vires* preclude him from assailing those acts on that ground.   A litigant is not at liberty to deny the validity of a contract, which is neither prohibited by law nor evil in itself, after he has knowingly sought and obtained pecuniary advantages, pay or compensation, under and by virtue of such contract.

This doctrine applies to the present case and is conclusive against the maintenance of this action by the plaintiff.   He has sold the privilege attaching to 885 of his Metropolitan Railway Company shares to subscribe to the stock of the Metropolitan Securities Company for between $5,000 and $6,000.   This privilege would have been absolutely non-existent, except for the plan and lease which he attacks in this

suit.   He was well aware of this and he cannot avail himself of the privilege and at the same time prosecute the suit.

The officers of a corporation who are sued by stockholders for damages due to carrying on business not authorized by its charter may defend by showing the stockholders' acquiescence in or assent to the business, express or implied. (*Holmes* v. *Willard*, 125 N. Y. 75, 82.)

In *Post* v. *Beacon Vacuum Pump & Electrical Co.* (84 Fed. Rep. 371) the United States Circuit Court of Appeals in the First Circuit considered the sufficiency of a bill in equity filed by stockholders of the Beacon Vacuum Pump and Electrical Company to rescind a transfer of its property to the Beacon Lamp Company; and it was held that the complainants being minority stockholders who opposed the transfer were estopped from maintaining a suit for rescission on the ground of *ultra vires*, because they had subscribed for their proportion of the stock of the new corporation, although under protest, and had permitted such company to conduct the business for eighteen months.   "It is clear," said Putnam, C. J., "that the complainants have not maintained that consistent position necessary to relieve them against an equitable estoppel.   They admit that they have subscribed for their proportion of the 32,000 shares of stock in the new corporation.   They do not state the date when they made the subscription.   The transfer of the assets to this corporation was made in July, 1895, and the bill was not filed until the 12th day of January, 1897, so that, although at the outset they protested against the reorganization, yet their subscriptions, in the absence of any proper allegation otherwise, must be presumed to have been made at such time as justified the respondents in assuming that the lamp company was authorized, so far as the complainants were concerned, to receive the transfer of the property of the old corporation, and to commence and carry on its manufacturing business, thus involving itself in the liabilities and other complications inevitably arising therefrom.   *That this raised an estoppel in equity as against a bill praying rescission is too clear to*

*need discussion.* It is true that complainants allege that this subscription was under protest, and only to preserve their rights; but the bill does not give the court any details which would enable it to perceive that, by any possibility, the effect of the subscription, which of itself would be an accomplished fact, could be overcome by any protest or other formal reservation which might accompany it."

In *Towers* v. *African Tug Company* (L. R. [1 Ch. 1904], 558), which was a suit by two shareholders of the defendant to compel the directors to repay to the company the amount of a dividend illegally, though honestly, declared and paid, the decision of the English Court of Appeal is accurately stated in the head note as follows: "A shareholder in a limited company who has, with full notice or knowledge of the facts, himself received part of the proceeds of an *ultra vires* act committed by the directors — such as payment of a dividend out of capital — and who still retains the money, cannot, either individually or as suing on behalf of the general body of shareholders maintain an action against those directors." Lord Justice Vaughn-Williams, in the course of his opinion, says: "If it be the fact, as I think it is, that these plaintiffs knew of all that had been done, received their dividends with knowledge of all the facts, and then brought this action with the money still in their pockets, ought they to be allowed to bring this action, which, as I have pointed out, is, to my mind, an action such as they can bring in consequence of their personal interest in the matter? I think not. I think that an action cannot be brought by an individual shareholder complaining of an act which is *ultra vires* if he himself has in his pocket at the time he brings the action some of the proceeds of that very *ultra vires* act. Nor, in my opinion, does it alter matters that he represents himself as suing on behalf of himself and others. I think that the reason which requires us to say he ought not to bring such an action equally requires us to say that he ought not to be the peg upon which such an action is to be hung for the benefit of others."

The proposition that one may not deny the validity of a contract under which he has taken advantages was forcibly asserted.by the Supreme Court of the United States in the case of *United States ex rel. International Contracting Co. v. Lamont* (155 U. S. 303). There the relator applied for a writ of mandamus against the secretary of war to compel him to execute and deliver a contract under an advertisement for bids for dredging, which contract the relator claimed to have entered into with the secretary, so as to render it enforceable. The Supreme Court refused to consider any question as to whether the contract was to be regarded as complete or as to the authority of the secretary of war in the premises, because it appeared that at the time when the application for the mandamus was made the relator had voluntarily entered into a second contract to do the same work at a lower price and on different terms, and had already been paid on account thereof. " Even if the writ of mandamus could be so perverted as to make it serve the purposes of an ordinary suit," said Mr. Justice White, " the relator is in no position to avail himself of such relief. He entered of his own accord into the second contract, and has ·acted under it and has taken advantages which resulted from his action under it, having received the compensation which was to be paid under its terms. Having done all this he is estopped from denying the validity of the contract. (Citing *Oregonian R. Co.* v. *Oregon R. & N. Co.*, 10 Sawyer, 464.) Nor.does the fact that in making his second contract the relator protested that he had rights under the first better his position. If he had any such rights and desired to maintain them he should have abstained from putting himself in a position where he voluntarily took advantage of the second opportunity to secure the work. A party cannot avoid the legal consequences of his acts by protesting at the time he does them that he does not intend to subject himself to such consequences."

As was said by the Supreme Court of Alabama in *Robinson* v. *Pebworth* (71 Ala. 240), estoppel in a case of this character " simply means that you shall not take the fruits of an illegal

transaction and afterwards set the transaction aside as illegal."
In holding that the plaintiff here is precluded from attacking
the plan and lease in question by reason of his sale of the
privileges acquired by him thereunder as a stockholder in the
Metropolitan Railway Company, we do not pass upon the
legality of the scheme, either to condemn or approve it; we
simply decide that, even assuming it to be as unlawful as he
alleges, he is in no position to assail it.

This defense is available to the respondents notwithstanding
the fact that the plaintiff did not sell his privileges until after
the beginning of the suit. Matters which arise between the
bill and plea may be pleaded in equity. (*Turner* v. *Robin-
son*, 1 Simons & Stuart, 3.) Under the old chancery system
in this state there was no rule of equity pleading whereby a
defendant was precluded from availing himself of matters
arising between the filing of the bill and answer, by way of
avoidance or defense. (*Lyon* v. *Brooks*, 2 Edw. Ch. 110.)
Nor is there any such prohibition under the Code. (See
*Beebe* v. *Dowd*, 22 Barb. 255, 259.) As was said by the late
Mr. Justice HARDIN in *Mann* v. *City of Utica* (44 How. Pr.
334, 339): "It is a familiar rule in equity cases which permits
courts to take into consideration subsequent events happening
after the commencement of the action in equity and deter-
mining what relief shall be granted, especially where part of
the relief asked for is an injunction from the court to restrain
parties."

For the reasons which have been stated, and without con-
sidering or deciding the other questions discussed by counsel,
we conclude that this judgment should be affirmed, with
costs.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN, WERNER and
HISCOCK, JJ., concur.

Judgment affirmed.