(No. 5419.   July 25, 1930.)

J. M. HANSEN, ROBERT DIETRICH, WALTER EICK-
ELBERGER, EDWARD IRELAND, C. T. JUDY,
—— MOFFATT, WALTER KARN, W. A. HOCK-
ING, EDWARD BURKET, CLARENCE JACKSON,
M. L. JONES, HARRY MAYS, G. G. HARROLD,
J. H. KING, H. COWGILL, ROSE MORGAN, JOHN
LOGAN and LESTER SERMON, Appellants, v. M. H.
WOODS, JACOB KELLER, JOHN DIETRICH,
BLAINE COUNTY INVESTMENT COMPANY, a
Corporation, and BLAINE COUNTY CANAL COM-
PANY, a Corporation, Respondents.

[290 Pac. 379.]

G. F. Hansbrough and J. H. Andersen, for Appellants.

Peterson, Baum & Clark, W. J. Lamme and Wm. Story, Jr., for Respondents.

VARIAN, J.—This case involves analogous questions to those in *Blaine County Canal Co. v. Hansen* (No. 5401), just decided, *ante,* p. 649, 292 Pac. 240.

Appellants are settlers, contract holders and purchasers under a Carey Act project situate in Butte county, Idaho. They are likewise stockholders in respondent Blaine County Canal Company, and bring this action in the nature of an accounting as to the application of moneys raised by assessments levied during the years 1920 to 1926, both inclusive, by respondent Blaine County Canal Company, for an injunction prohibiting the unlawful expenditure of the funds of said canal company, and by supplemental complaint prayed the removal of respondents Woods, Dietrich and Keller as directors and officers of said company; that respondents be enjoined from allowing water other than Carey Act project water to be run through the canals of the Blaine County Canal Company; and that a deed granting an easement to transport water belonging to the Butte Land & Water Company through the canals of said Blaine County Canal Company, be canceled. A receiver was applied for, but the application was abandoned at the opening of the trial.

Among other facts, the court found that the Blaine County Investment Company is the successor in interest of the Blaine County Irrigation Company, Ltd., organized under

the laws of Idaho to construct a reservoir and system of canals for what is designated as the Blaine County Project, in Butte County, Idaho (Idaho Segregation List No. 53), pursuant to a contract with the state of Idaho dated June 29, 1910. The respondent Blaine County Canal Company is a corporation organized by said Blaine County Irrigation Company, Ltd., pursuant to the terms of said contract with the state of Idaho, to take over and operate the irrigation system and distribute the water when said system should be so far completed as to permit of operation thereof, and for the purpose of levying and collecting tolls, assessments and charges for the operation, maintenance and management of said system. As provided for in the construction contract, the entire capital stock of said Blaine County Canal Company was issued to the Blaine County Irrigation Company, Ltd., and sold by it to settlers on the project, including appellants and others not parties to this suit.

The reservoir contemplated by the original contract having been found to be pervious to water and not capable of storing the required amount of water, the state and the Blaine County Investment Company, successor in interest of said Blaine County Irrigation Company, Ltd., on August 24, 1917, entered into a supplemental agreement, whereby the said Blaine County Investment Company agreed to construct what is called the Dry Creek reservoir and pipe-line, in lieu of completing the original reservoir. The supplemental contract provides that the Dry Creek dam shall be constructed to a height of 110 feet, but because of the physical condition of the canyon walls, it was able to construct said dam to a height of eighty-five feet. The pipe-line, extending from said reservoir to Corral Creek, whereby the waters of said reservoir are discharged into West Creek, a tributary of Little Lost River, and thence upon the lands of the project, has been completed, and during the years 1920 to 1927, both inclusive, said stored waters of Dry Creek have been diverted through said pipe-line and constitute sixty-five per cent of the aggregate water supply available for the entire project.

The third finding of fact is as follows:

"Pursuant to said supplemental contract between the defendant, Blaine County Investment Company, and the State of Idaho, that part of the irrigation system described in the said contract between Blaine County Irrigation Company, Ltd., and the State, consisting in general of the main diverting canals, laterals and other works for diversion of the waters of Little Lost River and distribution of the same over the land included in said project, was turned over, with the approval of the State Land Board, to the defendant, Blaine County Canal Company, Ltd., during the year 1920, for operation, and has since been operated by said company, but because of the said Dry Creek Reservoir not having been completed in accordance with the said supplemental contract between the defendant Blaine County Investment Company and the State, the said reservoir, pipe line and appurtenant water rights have not been conveyed to a reservoir company by the defendant, Blaine County Investment Company, for operation and for the purpose of levying and collecting tolls and assessments for operation and maintenance thereof, as contemplated by the said supplemental contract between the said Investment Company and the State."

The court further found that for eight years last past, or since 1920, the construction company, Blaine County Investment Company, has been and now is insolvent; that it is without funds, or the means of obtaining funds, to pay the expenses of maintaining or operating the Dry Creek reservoir and pipe-line, or otherwise perform the covenants of the supplemental agreement aforesaid; that notwithstanding there has been no formal order for the transfer to the Blaine County Canal Company for operation, it has been necessary for it to operate and maintain the said Dry Creek reservoir, pipe-line, etc., during said period of more than eight years, and that no part of the funds expended by it have been for original construction as distinguished from repairs and maintenance; that without the waters from the Dry Creek source, it would have been impossible for appel-

lants and other settlers on the project to raise profitable crops on any of their lands since the year 1920, and that the cost of maintenance of the Dry Creek works and system is a necessary legitimate part of the expense incident to the operation and maintenance of the project by respondent Blaine County Canal Company; that appellants have received and used the water from the Dry Creek source, and derived a benefit from and commensurate with the expenditures made in connection with the maintenance of said pipe-line, reservoir, etc., in proportion to the number of shares of stock in said canal company owned by them.

As found by the court, M. H. Woods, during the years 1920 to 1926, inclusive, was a director and held the office of secretary and treasurer of respondent Canal Company, and during all of said times there were two other members of the board of directors; and the evidence fails to show that Woods exercised entire charge of the company's business to the exclusion of his codirectors. It further finds that Woods has exercised no undue influence on the affairs of the corporation; that at times the corporation was without funds, and Woods would advance moneys on its account, so that, on taking the accounting, the court finds that Woods is not indebted to the corporation in the sum of $16,000, but on the contrary the corporation is indebted to him in the sum of $572.74. Accounts were rendered regularly at the annual stockholders' meetings by Woods, showing his receipts and disbursements as treasurer of the operating company, including receipts from assessments levied and expenditures made in the operation and maintenance of the Dry Creek reservoir and pipe-line, to none of which objection was made by appellants or other stockholders of said Canal Company until shortly prior to the commencement of this action. As found by the court, the evidence does not show that the individual respondents own or control a majority of the outstanding stock of the Canal Company. It likewise finds there is no evidence to sustain the contention that there was any improper voting of proxies at the stockholders' meeting in 1927.

Appellants' main contention is that the Blaine County Canal Company, being the holding or operating company of the Blaine County Investment Company, successor in interest of the Blaine County Irrigation Company, Ltd., under the facts disclosed in this case, was not entitled lawfully to levy in excess of fifty cents per acre for maintenance purposes; that is, the project not having been completed so that all the water contemplated by the contracts with the state of Idaho was delivered to the settlers, it could not be legally turned over to the holding company for operation and maintenance with power to levy assessments and tolls.

The record shows that, every year since 1920, the holding company has levied at least seventy-five cents per acre for each acre of land embraced within the settler's contracts, and an accounting is asked for as to the excess, from the officers of the holding company, over and above said fifty cents per acre. There are also several minor amounts involved, in addition to those growing out of the assessments, but, in view of there being sufficient evidence to sustain the trial court's finding against appellants, we do not deem it necessary to consider them.

The evidence discloses that when the original construction company, Blaine County Irrigation Company, Ltd., erected the dam contemplated by the original plans, the reservoir would not retain the water. When a new source of water supply was determined upon, a new contract was entered into with the state, with a new construction corporation, to wit: Blaine County Investment Company, assignee of Blaine County Irrigation Company, Ltd., for the construction of the works necessary to bring in the new source of water supply, involving the construction of a pipe-line, dam and storage reservoir on Dry Creek. The new contract reduced the amount of water to be furnished each acre of land in the project. When the dam on Dry Creek reached a height of approximately eighty-five feet, it was discovered that it could not be built higher on account of the physical condition of the canyon walls. The construction

company is insolvent; the only sources of water supply have been found inadequate, due to the impossibility of impounding the amount of water called for by the contract. It is physically impossible for the construction company to fulfill its contract. The system provides a partial water supply, sixty-five per cent of which comes from the Dry Creek source. Confronted with these conditions, it was but natural that the settlers should endeavor to salvage what they could, and make use of the partial water right available. Only a portion of the system was ever attempted to be formally turned over to the operating company. The interests comprising the Dry Creek reservoir and pipe-line were never so turned over. Nevertheless, the holding company assumed the operation and control thereof, and so continued in possession, operation and control of the system for more than eight years prior to the commencement of this suit, all of which was known to appellants and others interested.

It is admitted that M. H. Woods was an officer and director of the construction company, and an officer and director of the holding company; but it is not shown that he exercised any undue control of the latter, or used its funds in promoting the interests of the former, as charged in the complaint. Respondent Woods, while an officer of Blaine County Investment Company, had knowledge of the execution by the latter, in 1927, of a deed for a right of way, through said company's canals for water belonging to the stockholders of the Butte Land & Water Company, who were also stockholders of the Canal Company, said water being designed to supplement the supply furnished by the system heretofore mentioned. In the absence of facts or circumstances tending to show that the construction company was profiting at the expense of the stockholders of the holding company, this fact alone is not sufficient to sustain a charge of fraud.

The court found, supported by evidence, that the money raised by assessment by the holding company was expended by that company in maintenance and making repairs as

distinguished from new construction, and the record fails to show that the construction company has been benefited in any manner by the assessments collected by the holding company.

Appellants' contention as to the invalidity of the assessments in excess of fifty cents per acre, is based upon the following provisions contained in the first contract with the state of Idaho, assumed by the Blaine County Investment Company in its agreement with the state dated August 24, 1917. Paragraph 12 of said contract of 1910 reads in part:

"Beginning with May 1st, 1911, and for each succeeding year thereafter, while the second party retains control of the said Blaine County Canal Company, Ltd., purchasers of water rights in said system may be charged and assessed the sum of fifty cents per acre for each acre of land for which the water right has been purchased, said sum to be due and payable on the first day of May of each year. If the sum so raised shall be insufficient for the purposes of operating and maintaining in good repair said system, and paying the expenses of the management thereof, then the second party will, while it so retains control of the said system, furnish the additional funds necessary to supply such deficiency . . . . "

The contract between the original construction company and the settlers also contained the agreement by it "that the annual charge for maintenance shall not, while the company is in control of the said Blaine County Canal Company, Limited, exceed fifty cents for each and every acre, to be charged against the entire acreage entered, irrespective of the irrigation thereof."

Inasmuch as the assessments have been paid voluntarily by appellants as stockholders, no question can now be raised as to the validity of the assessments themselves, the action of the directors in levying them having been ratified by these acts of appellants and other stockholders. (6 Thompson on Corporations, 3d ed., sec. 4832, p. 738; *Callahan v. Chilcott Ditch Co.*, 37 Colo. 331, 86 Pac. 123.)

The question presented is whether, under the facts of this case, money raised by assessment to maintain that portion of the system not formally turned over to the operating or holding company, and expended by its officers in such maintenance, renders the latter individually liable for such expenditures.

■ Appellants C. T. Judy and Robert Dietrich, during a period of four years, were members of the board of directors of the holding company, during which time a large portion of the expenditures complained of occurred. All of the appellants, as stockholders, participated in the benefits of the expenditures; that is, they received water from the Dry Creek source, and if the maintenance and operating charges thereof (guarding the dam, maintaining the pipe-line, patrolling the river, etc.) had not been paid, they would have been without sufficient water to enable them to grow crops. The record shows that plaintiffs not only knew the provisions of the contracts under which they held their lands, and under which the construction was had, but knew, or were in position to know, for what purposes the money raised by assessment was paid out. Under the evidence, it is unbelievable that any stockholder on the project was in ignorance of the fact that the Dry Creek reservoir and pipeline were being maintained, and the river patrolled, to insure the water belonging to the project reaching its destination, by the operating company, from money raised by these assessments. Having received the benefits, with full knowledge of the facts, appellants are estopped to contend that the expenditures are *ultra vires,* etc. (14a C. J., p. 332, sec. 2173; 4 Fletcher's Cyc. Corp., sec. 2190, p. 3401; 6 Fletcher's Cyc. Corp., sec. 4073, p. 6957; *Traer v. Lucas Prospecting Co.,* 124 Iowa, 107, 99 N. W. 290; *McNab v. McNab & Harlin Mfg. Co.,* 62 Hun, 18, 41 N. Y. St. Rep. 906, 16 N. Y. Supp. 448; *Wormser v. Metropolitan Street Ry. Co.,* 184 N. Y. 83, 112 Am. St. 596, 6 Ann. Cas. 123, and note, 76 N. E. 1036.)

The construction company being insolvent, it was necessary, as shown by the evidence, to have a watchman at the Dry Creek dam to guard it, and to maintain and keep in repair the dam and pipe-line, in order to preserve the property itself, the benefits of which have been received by appellants; and they cannot be heard, after waiting all these years, to complain of these expenditures by the corporation. (See *Illinois Pneumatic Gas Co. v. Berry,* 113 U. S. 322, 5 Sup. Ct. 525, 28 L. ed. 1003; 3 Thompson on Corporations, 3d ed., sec. 2091, p. 722; 6 Fletcher's Cyc. Corp., secs. 4072, 4073; note, 10 A. L. R., p. 370.) Therefore, the court did not err in denying the injunction prayed for.

The evidence sustains the finding of the trial court to the effect that respondent Woods has made a full accounting of his expenditures as an officer of the Blaine County Canal Company, and it will not be disturbed.

Judgment affirmed. Costs to respondents.

Givens, C. J., and Budge, Lee and McNaughton, JJ., concur.