(115 App. Div. 156)

HIRSCH et al. v. JONES et al.

(Supreme Court, Appellate Division, First Department. October 12, 1906.)

1. CORPORATIONS—OFFICERS—RECOVERY OF SALARY PAID.
    In an action by stockholders to recover the amount paid the president of the corporation as salary, the fact that the executrix of a deceased stockholder who owned a controlling portion of the corporate stock consented to his election as president by reason of misrepresentations made to her was immaterial, where the directors electing him did not ask her consent or act at her request or inducement, and her consent was not necessary to his election.

2. SAME—ISSUES.
    In an action by stockholders, on behalf of the corporation, against one individually and as executor and trustee under the will of a deceased owner of a controlling portion of the stock of the corporation, to require him to account for moneys that had been wrongfully appropriated and misapplied, and to enjoin him from acting as a director or officer of the company, and to procure his removal as an officer and director, his liability to the estate of the decedent as to his dealing with the funds of the corporation is not in issue.

3. SAME.
    Salary paid to a president of a corporation, who was elected by the directors without his participation in the election and without fraud, could not be recovered by the corporation, though he was also in control of a majority of the stock as executor of a deceased stockholder.

4. SAME—CONSENT OF OFFICERS TO UNAUTHORIZED ACT.
    That directors of a corporation knew of and consented to an unauthorized loan of its funds by its president, and that one of them, who was

also treasurer, received and kept in his custody collateral security received for the loan, did not render them personally liable to the corporation for the amount of the loan.

5. SAME.

A corporation is not entitled to recover sums paid its treasurer in consequence of an increase of salary and a Christmas present given him by direction of the board of directors, where there was no fraud in the transaction, and the salary paid was not in excess of that proper for the services rendered.

Appeal from Special Term, New York County.

Action by Minnie F. Hirsch, individually and as executrix under the last will of Ferdinand Hirsch, and others, against Edward K. Jones, individually and as executor and trustee under the last will of Ferdinand Hirsch, and others. From a judgment in favor of plaintiffs, defendants appeal. Reversed, and new trial ordered.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and HOUGHTON, JJ.

David McClure and Edward W. Hatch, for appellants.

Charles F. Bostwick, for respondents.

INGRAHAM, J. The plaintiffs sue as stockholders of the Ferdinand Hirsch Company, a domestic corporation, and the relief demanded is that the defendant (appellant), its directors and officers, account to said corporation for all moneys that have been wrongfully appropriated or misapplied; that the appellants be enjoined from acting as directors or officers of the company; that they be removed as such officers and directors. The complaint contains many allegations as to the relation between the defendant Jones, her coexecutor, and the plaintiff, which are immaterial to an action to enforce claims in favor of the corporation. Any relief that the plaintiff, or the estate of which she is an executrix and trustee, may be entitled to as against Jones has nothing to do with the relief which can be granted in this action, which is based upon a breach of trust by the appellants as officers and directors of the corporation.

The material allegations upon which the judgment appealed from are based are as follows: On July 13, 1901, Ferdinand Hirsch died leaving a last will and testament, in which Minnie F. Hirsch, the testator's widow, was appointed executrix, and the defendant Jones executor. By that will a trust was created of the residue of the estate, to invest the same and apply the income arising therefrom to the benefit of the testator's widow during the minority of his children. Upon the arrival of the youngest child at full age, 10 per centum of the principal of the said trust fund was to be transferred to his widow, 25 per centum thereof to each of his children, and the remainder of the principal to be invested, the income therefrom to be applied to the use and benefit of his widow during her life, and upon her death the principal of the trust estate to be divided between his children equally. By a codicil to this will the testator authorized his executors to continue his investments in the stock of the Ferdinand Hirsch Company as long as they, in their discretion, should determine it to be advisable. At the time of his death the testator was the owner of 1,882 shares of the stock of the

Ferdinand Hirsch corporation, out of 2,500 shares, the total amount of the capital stock of the company which had been organized to take over a business that had been owned by Hirsch; and he became a director and president of the corporation on its organization, and continued in absolute control of it until the time of his death. Mr. Hirsch, from the time of the organization of the company, had received a salary of $12,000 per year until a short time before his death, when the salary had been raised to $15,000 a year. The defendant Ludwig had been secretary and treasurer of the corporation, receiving a salary, and continued as such down to the trial of the action. The business of the corporation having been profitable, dividends had been paid from time to time. This business was the manufacture of cigars at Key West, and upon Hirsch's death it became necessary to elect a president as his successor. Jones, who had been a director of the corporation from its organization, was, shortly after the death of Hirsch, elected president. Many charges are made against Jones in the complaint as to his management of the business of the company; but it will not be necessary to notice any of them except those that were sustained. The court found that the plaintiff, the testator's widow, was induced by false and fraudulent statements made by Jones to her as to the condition of the company, to consent that he be elected president and take charge of the affairs of the company. But it seems to me that this is immaterial. The directors of the company who were elected before the death of the testator and when he controlled it, held a meeting on August 5, 1901, elected Jones president, and fixed his salary at $1,000 per month What induced the plaintiff to consent to that action of the board is entirely immaterial. Thus the directors, who were authorized to elect the president, elected Jones as president and fixed his salary. It does not seem that the consent of Mrs. Hirsch was asked by the directors, or that they acted at her request or inducement, or that her consent was necessary or had any connection with the election of Jones as president.

The court found, and it is conceded, that Jones was legally elected president, and that the trustees of the company fixed his salary at the amount which he has since received. It does not appear that Jones voted at the election, or for the resolution that fixed his salary. The minutes of the meeting of the directors show that Jones withdrew from the meeting when these subjects were considered, and the action of the directors was unanimous; no objection at any time being made to the election of Jones or to the amount fixed as his salary. The court then found that the business of the corporation was continued after the death of Hirsch in the same manner as it had been prior thereto, and that as a result of the action of the defendant Jones in voting himself a salary of $12,000 per year (there being no evidence that Jones voted himself such salary, the evidence being that it was voted by the board of directors), and of wastefulness and extravagance in the management of the business of the company by the said Jones, Kopf, and Ludwig, the dividends of the company as declared by the directors fell from 8 per cent. in 1901 to 5 per cent. in 1904; that pursuant to the resolution passed at a meeting of the directors of the said company, held August 5, 1901, the defendant Jones received from the funds of the company

between the 5th of August, 1901, and the 4th day of January, 1905, the sum of $41,000, being the salary that he was entitled to under the resolution of the board of directors. As a conclusion of law the court found that between the 5th day of August, 1901, and the 4th day of January, 1905, the defendant Jones, while acting as director, and being then the president of the Ferdinand Hirsch Company, withdrew, and took, without authority therefor, from the funds of the said company, the sum of $41,000, wrongfully and unlawfully converted the same to his own use, and for that sum, with interest, aggregating $47,730.35, the court awarded judgment against Jones. There is no finding that Jones neglected to perform his duty as president of the company, or that the services he performed were not worth the salary paid him. The evidence is, and the court found, that since the organization of the company the salary paid to the president has been at least the sum of $12,000 per year.

It is sought to sustain this judgment upon the ground that, because Jones owned the controlling interest in the corporation as trustee, he was disqualified from being elected president of the company, and therefore the corporation can recover back the salary it had paid to him as such trustee. I can find no support for this contention. Whatever right the estate of which Jones is trustee has to compel him to account for the salary that he has received as president is not now before us. We are now concerned simply with the right of the corporation to recover back from Jones the salary that it has paid him as president, where there is no finding that Jones failed to perform his duties as president, or to devote his time and energy to benefit the corporation of which he was president. No relation existed between Jones and the company which imposed upon him any obligation other than that upon any other director, who was also owner or part owner of a majority of the stock. Whatever was his duty to the estate of which he was trustee, he owed no duty to this corporation to act for it or work for it without compensation. The doubt expressed by Mr. Justice Williams in Elias v. Schweyer, 13 App. Div. 336, 43 N. Y. Supp. 55, that: "It is questionable, however, whether a trustee, if so elected as president, should receive any salary, because it appears that the discretion is vested in the trustee to sell the stock, should an advantageous opportunity occur; and one who is in receipt of a large salary might be unconsciously biased in his judgment when the question was presented between his own interest in retaining such salary and the interests of his cestui que trust, which might be promoted by a sale of the brewery"— related solely to his relation to the trust estate, and had no relation to his obligation to the corporation to act for it or work for it without compensation. Whether or not the act of Jones in procuring himself to be elected president of the company at a salary of $1,000 per month would justify the court in removing him as trustee is not before us. What we have is a claim of the corporation to be repaid the money that it has paid to its president as salary by order of its board of directors, because it is claimed that the trustee, accepting the presidency of the company at a salary, violated a duty to the estate for which he was trustee.

It is also claimed that, as Jones controlled a majority of the board of directors, he cannot keep a salary voted to him by the directors as it is the same as if he had voted himself the salary. But these directors had not been elected by Jones. They were the directors who were placed in control of the corporation by the vote of Hirsch, who when they were elected owned and controlled a large majority of the stock. There is no evidence that Jones procured his election by any improper means, that he voted for himself at the meeting of the board, or voted for the resolution fixing his salary. There are many charges in the complaint which counsel for the respondents demominated as bribery and corrupt agreements between Jones and the other directors which resulted in his election, together with the allegations to which I have before referred that Jones procured the consent of the testator's widow and his coexecutor by means of fraudulent representation as to the condition of the company; but these allegations are not at all sustained by the evidence, and they rest at most on mere suspicion, because at the same time the salary of the secretary was increased, which the proof shows and the court has found was in pursuance of a promise made to him by the testator that his salary should be increased to the same amount that had been received by his predecessor, and the increase that was voted was less than the amount received by such predecessor. To a much greater extent then in the case of Jones, was the board of directors under the control and dominion of the testator during his life who owned a large majority of the stock and voted for the directors and the directors in turn elected him president, and fixed his salary, first at $12,000, and later at $15,000 per year. If this claim of the plaintiff is correct, the corporation might be entitled to recover back from the estate of the testator all the salary that has been paid him for the services he rendered to the corporation during the time that he was president.

In many of these trading corporations organized for the purpose of carrying on an established business, the stock is issued to the owners of the business transferred to the corporation, the members of the copartnership owning the stock elect the directors and the directors elect the officers. It has never before been suggested that such an arrangement was a fraud that would entitle the corporation to recover back the salary paid to the officers thus elected. Applying to this case the principle which was the foundation of the decision in Jacobson v. Brooklyn Lumber Co., 184 N. Y. 152, 76 N. E. 1075, the plaintiff's contention is not sustained. In that case there were three directors, and the court found that two of these directors had voted for various increases in their salary; that they credited such increase on the books of the company until the amount so credited had amounted to more than 50 per cent. of the total assets of the corporation, which was in addition to the amount that had actually been paid to these officers on account of such salary. The action was brought to recover from the individual defendants the amounts received by them for salaries as officers of the corporation, and to cancel any and all resolutions on the books of the corporation purporting to authorize the defendants to credit themselves with certain amounts for accumulated or deferred salaries, and also to re-

dress other alleged wrongs to the corporation. In reversing the judgment dismissing the complaint the court did not intimate that the plaintiff would be entitled to recover the amount of the salary actually paid to the officers, but the decision was based entirely upon the statement that:

"A director cannot, with propriety, vote in the board of directors upon a matter affecting his own private interests, any more than a judge can sit in his own case; and any resolution passed at a meeting of the directors, at which a director having a personal interest in the matter voted, will be voidable at the instance of the corporation, or the shareholders, without regard to its fairness, provided the vote of such director was necessary to the result."

The minutes of the meeting of the board of directors show that at the meeting at which Jones was elected president, after a dividend was declared, on motion of Mr. Ludwig, duly seconded, Mr. Jones was nominated for president to fill the unexpired term of Mr. Hirsch, deceased. Jones then withdrew from the meeting, and he was then elected president. There is no evidence to justify a finding that this election was produced by any corrupt means, or that the directors did not, in good faith, determine that his election would be for the best interests of the company. His position as president could be terminated by the directors, but his salary, while he continued to be president, was to be $1,000 per month. And certainly, having performed the duties of the office, and having received the compensation fixed therefor, there being no evidence that his election was procured by corrupt or illegal means, or that his salary was excessive or more than his services were worth, there is no principle by which the corporation, having accepted his services and received the benefit therefrom, can repudiate the transaction, and, without compensating him or offering to compensate him for the services so rendered, compel him to repay the salary that he has received. The plaintiff seems to proceed on the theory that on calling one charged with a fraud as a witness, upon his swearing that there was no fraud in the transaction and that the transaction was in absolute good faith, the court would be justified in refusing to believe him, and then finding fraud because it did not believe his evidence that there was no fraud. If the court was justified in refusing to accept the evidence of these interested witnesses, its refusal did not justify a finding of fraud without further evidence. I do not think, therefore, that on this evidence the corporation was entitled to a judgment for the salary paid to Jones as president.

The court also awarded against the defendants Jones, Ludwig, and Kopf judgment for $51,000 and interest for moneys paid by the corporation to Jones and the plaintiff as executor of Ferdinand Hirsch, which they applied to protecting certain stock which had been purchased by, and was held on margins for, Ferdinand Hirsch at the time of his death. The money of the company was used by the executors after the death of Ferdinand Hirsch in connection with certain stock speculations undertaken by Hirsch during his life and was evidently intended to benefit the estate. Minnie F. Hirsch, the plaintiff, was an executrix, and she was also trustee for the two infant plaintiffs. It has been suggested that the judgment might be affirmed as to this $51,000,

but the question arises as to the right of the plaintiff to maintain a stockholder's action to recover that amount. Upon the record, as it now comes before us, we do not pass upon that question. We cannot say that the trial justice found that the act of Jones in using the money of the company for the protection of Hirsch's stock was fraud or abstraction of the company's money. It may be that, if Jones, without authority, appropriated the money of the company to the use of the estate of which he was trustee, the plaintiff will be entitled, suing as a stockholder, to compel restitution; but, if the transaction was a loan of money merely, the act of the corporation in loaning it being ultra vires, and all the directors and the plaintiff Minnie F. Hirsch assented to and participated in it, under Wormser v. Met. St. Ry. Co., 184 N. Y. 83, 76 N. E. 1036, she may be precluded from maintaining the action as to this particular transaction; no other stockholder repudiating it or associating himself with the action.

The difficulty in determining the question on the present record is that the findings of the court below with respect to the $51,000 are altogether unsatisfactory. By the thirty-third finding it is declared that between dates stated "the Ferdinand Hirsch Company disbursed the sum of $51,000 in alleged loans to the executors of the Ferdinand Hirsch estate and transactions, which were used outside of and foreign to its business concerns and corporate affairs, to wit, to protect stocks held on margin by the estate of Ferdinand· Hirsch, deceased, by and through the acts of the defendants Edward K. Jones, Rudolph Ludwig, and Frederick Kopf, who knew that the company was not interested or concerned in said alleged loans and transactions, and would not be benefited thereby, or receive any consideration therefor, and that said defendants knew that the moneys were to be used to protect stocks held on margin by the estate of Ferdinand Hirsch, deceased." But by the ninety-sixth and ninety-seventh findings of fact, the court found that "after the death of Ferdinand Hirsch the plaintiff Minnie Hirsch and the defendant Edward K. Jones, as executors, borrowed from the Ferdinand Hirsch Company at different times in all the sum of $51,-000"; that "as collateral to the loans made to them by the Ferdinand Hirsch Company the plaintiff Minnie F. Hirsch and the defendant Edward K. Jones, as executors of the will of Ferdinand Hirsch, deceased, pledged to and deposited with the Ferdinand Hirsch Company 905 shares of the stock of the Ferdinand Hirsch Company held by them as such executors, which stock is still in the possession of the company."

By these last two findings of fact, the transaction is presented as a loan of money to the plaintiff Minnie F. Hirsch and the defendant Jones, as executors, for which loan they gave collateral security, and it is referred to as one directly between them and the Ferdinand Hirsch corporation; and in his opinion the learned trial justice seems to consider only the power of the corporation to make the loan. These last-mentioned findings of fact present the case apparently of a loan of money upon collateral security given, and may be regarded as relieving the transaction of the element of positive fraud. We refrain from expressing an opinion as to the right of the plaintiff to maintain the action until the real nature of the transaction is determined by the tria~

court upon a finding whether there was a fraudulent diversion of the company's money by Jones, its president, or whether it was a simple transaction of a loan of money made directly by the company with the acquiescence of all interested to the executors and without fraud. In any aspect of the case, the evidence did not justify a judgment for this $51,000 against the defendants Ludwig and Kopf. The court found that between December 11, 1902, and July 13, 1903, the corporation disbursed $51,000 in alleged loans to the executors of the Ferdinand Hirsch estate, which were used outside of and foreign to its business concerns and corporate affairs, to wit, to protect stocks held on margin by the estate of Ferdinand Hirsch, deceased, by and through the act of the defendants Jones, Ludwig, and Kopf, who knew the company was not interested or concerned in said alleged loan and transactions, and would not be benefited thereby, or receive any consideration therefor, and that said defendants knew that said moneys were to be used to protect stocks held on margin by the estate of Ferdinand Hirsch, deceased.

Assuming that Jones, the president of the company, would be liable to the company for the unauthorized appropriation of this money, the evidence does not sustain the finding that the payment of the money was "by and through" the acts of Ludwig and Kopf. It appeared that Hirsch was, at the time of his death, indebted to the corporation in the amount of $39,116.98. He was also carrying stocks on margin. After his death the executors of Hirsch's will borrowed from the corporation between December 5, 1902, and July 13, 1903, various sums of money aggregating $51,000, which were applied to protecting this stock account. At the time these loans were made there were delivered to Ludwig, as treasurer of the corporation, 450 shares of the company's stock as security for the amount borrowed. These various loans were charged to the estate of Hirsch and added to the amount due from him at the time of his death, and the dividends paid upon the stock credited upon this account. Ludwig testified that he knew the purpose for which this money was borrowed, and that Jones handed him the certificate for the stock, telling him that they "were the shares for the loans" and put them in the treasury of the company. I can find no evidence that Ludwig had anything to do with making these loans. He acted, so far as appears, as a subordinate officer of the corporation, obeying the orders of the president. The only evidence as to Kopf's connection with them was his own testimony that the moneys were borrowed from the corporation by the executors for the purpose of putting up margins with the various brokers, and that he consented to the making of the loans by the company to the executors. Neither his knowledge of the purpose for which the loans were made, nor his consent to the making of the loans, when such consent was not an official act which authorized the making of the loans, or by which the president was enabled to obtain the money, made him liable to the corporation for the money that was paid to the president, or the estate of which the plaintiff and the president were executors. Kopf was not an executive officer of the corporation. As an individual director, without the concurrence of a majority of these directors who were present at a meeting of the board,

his consent would not be an act of the corporation, and without proof that his consent or act had anything to do with the loans, or with the payment of the money of the corporation to the executors, I do not think he would be personally liable for the money thus paid.   Neither Ludwig nor Kopf ever received any of this money.   Neither profited in any way by the loans; and to make them liable for the money that was paid by the corporation to the president or the executors of the Hirsch estate, it must appear, as I view it, that they participated in the corporate act of making the loans or paying the money.   I can find no evidence of such participation.   Assuming that Jones would be liable to the corporation for the money loaned to the Hirsch executors, it was error to award judgment against Ludwig and Kopf.

There is a question presented as to whether the dividends on the estate stock which was retained by the corporation should be credited on this loan to the executors or on account of the amount due to the corporation by Hirsch at the time of his death.   By the will of Hirsch his estate, which included the stock of this corporation, was bequeathed to the executors in trust for the benefit of his widow and children.   There is also a question as to whether the executors had any authority to pledge such stock, and whether the corporation could refuse to pay the dividend because Hirsch was indebted to the corporation or because the executors had borrowed money from the corporation and pledged the stock for its repayment; but, as there must be a new trial, it is not necessary to determine these questions.

The court also awarded judgment against the defendant Ludwig for certain sums that were paid him in consequence of an increase of his salary in August, 1903, and for a Christmas present, by direction of the board of directors.   I do not think this provision of the judgment can be sustained.   Hirsch had promised Ludwig that his salary should be increased, and subsequent to Hirsch's death the directors fulfilled that promise.   Ludwig demanded an increase of salary.   He was not bound to remain in the employ of the corporation if it was refused.   The evidence does not show that there was any fraud in the transactions, or that the act of the directors was fraudulent.   Ludwig received his salary under this authority, and I do not think that the company can recover back, certainly not without evidence of fraud, or that the salary as paid was in excess of that proper for the services rendered.

There are other questions presented by this record which I do not think it necessary to discuss.   There was a large amount of testimony allowed against the objection of the defendants as to the relations between Jones and coexecutors which seem to have impressed the court, but which was, I think, entirely irrelevant, and I think that justice requires that a new trial should be directed, at which the evidence can be confined to the relations between the appellants and the corporation of which they were directors and officers, the responsibility of each of the defendants for any unauthorized appropriation of the money of the corporation ascertained, and a proper judgment awarded.

It follows that the judgment appealed from is reversed, and a new trial ordered, with costs to the appellants to abide the event.   All concur.