9 247
f139 241

## ANDERSON v. SNOW & Co.

1. Although it may not be allowable for a witness to state a conclusion of law instead of the facts, of which it is predicated, it is competent for one informed upon the subject, to answer whether certain persons did at a time and place designated, enter into an agreement to run as a company a line of stages; for though the question, whether a partnership existed, may involve a legal inquiry, it is a distinct fact, whether an agreement was entered into with a view to its creation.

2. The plaintiff sought to charge a party as a partner in running a line of stages, and gave evidence of his declarations at different periods—at the earliest he admitted the partnership, and at the latter denied it. Plaintiff farther offered to show, that at the time of defendants denial, another line had been started on the same road, and in consequence of the competition, the charge for passengers had been greatly reduced: *Held*, that this latter testimony did not impair the weight of the declarations last made by the defendant, but were irrelevant. and consequently rightly rejected.

3. The declarations of a party, that he had promised to a stage line four horses, are not evidence sufficient to warrant the inference, that he was a joint proprietor; and it is competent to repel all inferences to his prejudice by showing that he actually sold three horses to the agent of the ostensible proprietor of the line.

Writ of Error to the Circuit Court of Chambers.

This was an action of assumpsit, at the suit of the plaintiff in error, against Wm. W. Snow, James Aikin, Minor W. Harris, James Robinson, and Seaborn J. Thompson, as partners under the style of W. W. Snow & Co. to recover of them the sum of $133 28, for keeping and feeding stage horses belonging to the defendants; and also, for the board of stage drivers in the employment of the defendants, at their special instance and request. The common counts are also added.

The defendant, Aikin, pleaded—1. *Non assumpsit*. 2. That at the time the plaintiff's cause of action is alledged to have accrued, he was not a partner of the defendants named in the declaration. 3. He never was a partner of the defendants, as charged in the declaration. A judgment by default was rendered against the other defendants, and damages assessed; the issues upon the pleas were submitted to a jury, who returned a verdict in favor of Aikin, affirming that he was not a partner of the company, and a judgment was rendered according to the finding of the jury.

On the trial of the issues, the plaintiff excepted to the ruling of the court. The bill of exceptions presents the following points: 1. The defendants were sought to be charged as partners, in running the Defiance line of stages from Greenville, in Georgia, to Franklin, in Alabama. It appeared from the evidence, that Snow made the contract upon which the action was brought, upon account of the stage line. Several

witnesses testified to conversations and admissions of Aikin, tending to show that all the defendants, and one James Loveless, met about December, 1841, in LaGrange, Georgia, for the purpose of entering into an agreement to run in company the Defiance line of stages, and that Aikin was appointed the President of the company. Aikin then introduced Loveless as a witness, who testified that all the defendants and himself did meet at the time, place, and for the purpose above mentined; thereupon Aikin asked him, if any company was formed at that meeting. To this question the plaintiff objected; his objection was overruled, and the witness permitted to answer.

2. The plaintiff then proved the declarations of Aikin, made in 1841, or early in 1842, tending to show that he was interested in the Defiance line of stages; he also proved the declaration of Aikin, made in 1843, about the time the line ceased to run, denying that he was interested in it; he then proved, that in the latter part of 1842, and early in 1843, another line of stages was run on the same road, in opposition to the Defiance line; and that in consequence of the competition between the two lines, the charge for passengers was reduced from fifteen to five dollars. To the admission of this latter evidence, Aikin objected, and his objection was sustained.

3. The plaintiff also introduced proof of the admissions of Aikin, tending to show, that he, Aikin, had promised to the Defiance line of stages four horses. Aikin then offered a witness, who testified that he had been an agent in the employment of W. W. Snow & Co., that as the agent, he had, under the directions of W. W. Snow, purchased of Aikin three horses, which horses were placed in the service of the Defiance line, while it was run by the company; he further stated the price at which the horses were purchased. To the admission of this testimony the plaintiff objected; but his objection was overruled, and the evidence was allowed to go to the jury.

L. B. Robertson and S. F. Rice, for the plaintiff in error, made the following points: 1. The witness, Loveless, should
32

not have been permitted to state, in answer to the question by the defendant, Aikin, that a company, or partnership, was not formed at the meeting at LaGrange, in December, 1841. [1 Ala. Rep. 632; 7 Id. 784; 10 Johns. Rep. 531; 4 Wend. Rep. 320; Whetstone v. Br. Bank at Montgomery, at this term.] The facts should have been stated, that the jury might determine whether the partnership was formed.

2. It was allowable to prove the establishment of an opposition line of stages, and the reduction of fare about the last of 1842, or first of 1843, for the purpose of authorizing the inference, that the denial of his connection with the Defiance line at that period, proceeded from the fact that it had become unprofitable.

3. The plaintiff proved, that Aikin had promised to W. W. Snow & Co. four horses for the Defiance line. This testimony tended to show that he was a member of the company; and it was not met and repelled by the evidence that an agent of the firm had purchased of Aikin three horses, for the use of the line. This latter evidence should have been rejected.

J. E. Belser, for the defendant in error, insisted, that the testimony objected to, was not obnoxious to the objections made to it; that the authorities cited upon the first point, were wholly inapplicable. The testimony which is stated under the third head, was not irrelevant, but it was clearly competent for the jury to consider its effect.

The evidence rejected at the instance of the defendant, Aikin, tended to establish nothing material to the plaintiff's case, was wholly abstract, and should not have been received by the court.

COLLIER, C. J.—In Parker et al. v. Haggerty, 1 Ala. R. 632, a witness stated, that S occupied a lot under P, and as his tenant. This court said, "The answer, instead of stating facts, states a conclusion of law from facts, which the witness knew himself, or had heard from others. Whether the relation of landlord and tenant existed between P and S, the jury could alone determine, under the direction of the court, as to the law arising out of the facts;" consequently the evi-

dence was adjudged inadmissible.　This case is more analogous to that now at bar, upon the point we are considering, than either of the others embraced by the plaintiff's citations. Yet, in *principle* they are altogether dissimilar.　The question whether the relation of landlord and tenant exists, is frequently easy of solution, sometimes it depends upon a variety of facts and considerations; but whether the facts be complicated or simple, they should be referred to a jury, with appropriate instructions upon the law.　So it is sometimes a point of nicety, whether a partnership has been formed, and the liability of the parties *inter se,* or in respect to third persons.　But whether a number of individuals associated themselves together, with the view of accomplishing a definite purpose, is certainly a distinct fact, and a witness who is informed upon the point, may respond affirmatively, or negatively, to such inquiry.　If the adverse party is dissatisfied, he may, upon a further examination, interrogate the witness specially, and do away the effect of the first answer, if it was unadvisedly given.　Hence we conclude that upon the first point, the law was correctly ruled.

2. It cannot be predicated of the reduction of the stage fare, about the last of 1842, or the beginning of the next year, that the line had become unprofitable, and consequently, the defendant, Aikin, was induced to deny his connection with its ostensible proprietors.　The reduction of the charge for passengers, upon the establishment of an opposition line, only proves, that that previously fixed was too high.　Such testimony is too inconclusive, and farfetched, to authorize a jury to say, that declarations of the defendant, elicited by the plaintiff himself, are untrue, when they do not conflict with it.　It will not do to say, that the testimony should go to the jury, that they may judge of its effect; if it is irrelevant, or leads to no result, it is the duty of the court to exclude it, that the jury may not be misled or embarrassed by it.

3. The promise of four horses to the Defiance line, or rather W. W. Snow & Co. is somewhat equivocal, but certainly does not necessarily show, that he was to give them, or that they were to constitute either a part, or the whole, of his contribution to the stock of the company.　It may with equal propriety be assumed, that he promised to sell the concern

four horses. For the purpose of resolving the doubt, and relieving himself from the presumption, (if it could be indulged,) of being a partner, we can conceive of no objection to the proof, that Aikin sold three horses to an agent of the company, at an agreed price.

This view is decisive of the case ; the judgment is therefore affirmed.