## SHORTER vs. SHEPPARD.

[BILL IN EQUITY TO QUIET TITLES TO LAND.]

1. *Predicate for secondary evidence of deed.*—The grantee being presumed to have the custody of a deed, the fact that he fled from the State, eight or nine years ago, as a fugitive from justice, and has not since been heard of, is a sufficient excuse for the non-production of the deed by one claiming under a purchase at execution sale against him.

2. *Secondary evidence of execution and contents of lost deed.*—The oral admissions of the grantee, as detailed by witnesses twelve or thirteen years after they were made, to the effect "that he had given up the property, the times being hard, and he being unable to make his payments;" "that he had given all the lands back to his uncle," the grantor; "that he had parted with all the rights he had to the lands, and to his uncle;" and "that he had re-conveyed all the lands back to his uncle,"—held insufficient, under all the circumstances of the case, to establish the execution and contents of a re-conveyance of the lands.

APPEAL from the Chancery Court of Barbour.
Heard before the Hon. WADE KEYES.

THE bill in this case was filed by John Gill Shorter, against Edmund Sheppard, in his own right, and as administrator of George W. Lore, deceased, and the infant heirs-at-law of said Lore. Its object was to quiet the complainant's title to a large tract of land lying in Barbour county, and several town-lots in Eufaula, which are particularly described in the bill; and to enjoin the defendant Sheppard from proceeding, under an order of the orphans' court, to sell the interest therein which he claimed as belonging to the estate of his intestate, and from instituting threatened actions at law for the recovery of the interest which he claimed in his own right. The claimant derived title to the land under purchases at sheriff's sale, made in 1843, 1844, and 1845, under sundry executions issued on judgments against one Seth Lore; and a purchase under a decree in chancery, in October, 1846, which was rendered in a suit instituted by the Branch Bank at Montgomery against said Seth Lore; while the defendants asserted title under deeds from said

Seth Lore, dated the 18th May, 1838, by which he conveyed said lands and town-lots to said George W. Lore and Edmund Sheppard jointly. The bill alleged that these deeds, which were duly recorded, were not *bona fide* and absolute, but were intended simply as a power of attorney to enable the grantees to sell and convey, under an agreement between them and the grantor, to the effect that the proceeds of sale, over and above the aggregate amount specified as the consideration of the deeds, should be paid over to the grantor; and that the grantees, in the year 1841, by separate deeds, re-conveyed all the lands and lots to said Seth Lore. The re-conveyance from Sheppard to Seth Lore, dated the 25th October, 1841, was duly recorded in the proper office in Barbour county, and no question is made in this court respecting it. The re-conveyance from George W. to Seth Lore, which was never recorded, was alleged in the bill to be lost, or to have been carried off by said Seth Lore when he fled to parts unknown; and the only matter of controversy in this court, by agreement of record between the counsel of the respective parties, was, whether this re-conveyance was established by legal evidence. The material facts disclosed by the record, bearing on this point, are briefly these:

Seth Lore removed from Philadelphia, where he left his family, and settled in Barbour county, Alabama, where he engaged in land-speculations. George W. Lore was his nephew, brought out by him from New Jersey, and alleged in the bill to be without means or property of any kind. In the spring of 1841, Geo. W. Lore was arrested in Barbour county, for the murder of one Blake, but was discharged on bail; remaining in Eufaula for five or six weeks, and going to Philadelphia on a visit. After his return from the north, having been given up by his bail, he was confined for some time in the county jail, from which he succeeded in effecting his escape; but being caught, in the fall of 1842, in the vicinity of the murder, he was seized by a mob of the citizens, and summarily executed. In the spring of 1842, Seth Lore was indicted, in the circuit court of Barbour, for perjury; and

42

to escape the prosecution, absconded from the State, and fled to parts unknown. The bill alleged, that the arrest and confinement of George W. Lore, as above stated, "mainly conduced to the withdrawal of said power of attorney from him and said Sheppard, and likewise prevented them from joining in one re-conveyance at one and the same time;" that Seth Lore, after the execution of the two re-conveyances to him, took possession of the lands and lots, and assumed the entire control and management thereof; that on the 6th November, 1841, he executed a mortgage on all the property, to secure a pretended debt of $17,000 alleged to be due to one William Lore, of Philadelphia, who was his brother; that this mortgage was held fraudulent and void by the chancery court, in the suit above referred to as having been instituted by the Branch Bank at Montgomery, and a decree was rendered for the sale of the lands, which were purchased at the sale, as above stated, by the complainant; and that Seth Lore, when he fled from the country to escape the prosecution for perjury, carried with him all the deeds and muniments of title appertaining to the lands.

To prove the execution and contents of the re-conveyance from George W. to Seth Lore, the complainant took the depositions of George L. Barry, David Lore, and W. S. Paullin. In relation to said re-conveyance, Barry testified as follow: "In the year 1841, George Lore told witness that he had re-conveyed all the land back to his uncle; but he does not recollect whether he stated when the re-conveyance was made; witness never saw the re-conveyance, and does not know where it is." David Lore testified as follows: "Witness understood from George Lore, that he and Sheppard had given up the land and lots, and had re-conveyed the property to Seth Lore; that the times had got hard, and he was unable to make the payments. Witness does not recollect whether he said a deed was made or not, nor whether he said he had got back his notes or not, nor whether he used the word re-conveyed or not." (On cross-examination.) "Witness never heard George Lore say he had made any

re-conveyance in writing, nor anything about a writing: his exact words were, that he had given up the property, the times being hard, and he being unable to make his payments." Paullin testified as follows : "George and Seth Lore conversed together in presence of witness, and both told him that Seth had taken the lands back. Witness understood George, in conversations had with him, to say that he had given all the lands back to Seth ; can't recollect whether he said he had conveyed or given them back; but the substance of what he said was, that he had parted with all the rights he had to the lands, and to Seth Lore. What witness says, about George giving up the property to Seth, is not a mere impression or conclusion of his from what George said ; but George used some expression which witness cannot recollect, but which, in substance, admitted a rescission of the trade, and a re-conveyance of the lands to Seth Lore."

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

CHILTON, MORGAN & CHILTON, for appellant.—1. The predicate for the introduction of secondary evidence is sufficiently laid.—Scott v. Rivers, 1 Stew. & P. 19 ; Mordecai v. Beale, 8 Porter, 536 ; Minor v. Tillotson, 7 Peters, 99 ; United States v. Rayburn, 6 Peters, 352 ; Bailey v. Johnson, 9 Cowen, 115 ; Mauri v. Heffernan, 13 Johns. 58 ; Quinn v. Rippey, 4 Ired. Eq. 181 ; Jackson v. Vail, 7 Wendell, 125 ; Allen's Lessee v. Parish, 3 Ohio, 107, 122 ; Renner v. Bank of Columbia, 9 Wheaton, 596 ; Edgar's Lessee v. Robinson, 4 Dallas, 132 ; Bassler v. Niesser, 2 Serg. & R. 352; McDonald v. Campbell, 2 Serg. & R. 473 ; Clark v. Van Kirk, 14 Serg. & R. 354 ; Fetherly v. Waggoner, 11 Wendell, 599 ; 2 Metcalf, 363 ; Belton v. Briggs, 4 Dess. 475 ; Ashmore v. Hardy, 7 Car. & P. 501 ; Nolen v. Gwinn's Heirs, 16 Ala. 725 ; Bishop's Heirs v. Hampton, 19 Ala. 792 ; Corbin v. Jackson, 14 Wend. 619 ; 3 Rawle, 437 ; Riggs v. Tayloe, 9 Wheaton, 483; 5 Peters, 233 ; 9 Vermont, 334. Most of these cases also show, that the statute of frauds did not change

the general rules of evidence, and that it has nothing to
do with the case where a written conveyance is proved to
have been executed.

2. The admissions of George W. Lore, under the cir-
cumstances disclosed by the record, are sufficient evidence,
as against his heirs and administrator, of the execution,
delivery and contents of the re-conveyance by him to Seth
Lore.—1 Greenl. Ev. (5th ed.) §§ 96–97; Doe v. Watson,
2 Starkie, 230; Digby v. Steele, 3 Camp. 115; Sewell v.
Stubbs, 1 Car. & P. 73; 1 Starkie, 181; 2 Camp. 188;
4 Camp. 375; Barker v. Ray, 2 Russ. 67; 6 Mees. & W.
664, and notes; Hodges v. Hodges, 2 Cushing, 455; 7 J. J.
Mar. 445; Corbin v. Jackson, 14 Wendell, 619; McDon-
ald v. Campbell, 2 Serg. & R. 474; Adam v. Kerr, 1 Bos.
& Pul. 360; Allen's Lessee v. Parish, 3 Ohio, 122; 4 Bibb,
364; 4 East, 54; 6 Hill, 303; 2 Wendell, 575; Adams
v. Shelby, 10 Ala. 483; 3 Bing. N. C. 29; 1 Nott & McC.
226; 4 Dallas, 132.

E. C. Bullock, with Elmore & Yancey, *contra.*—There
is no proof that a re-conveyance from George W. to Seth
Lore ever existed, or that it was legally executed, or
what its contents were. If the existence and loss of the
deed had been established, the complainant would still
have been held to as strict proof of its execution as if it
had been produced.—Stone v. Thomas, 12 Penn. 209;
Kelsey v. Hamner, 18 Conn. 311; Elmendorf v. Carmi-
chael, 3 Litt. 472; Rhodes v. Siebert, 2 Barr, 18; 3 Whar-
ton, 424; 6 Watts, 228; 4 Greenl. Rep. 368; 2 Starkie,
528; 31 Maine, 510; 25 Maine, 90; 3 Stew. & P. 227.
The only evidence adduced of the existence, execution,
and contents of the deed, consists of parol admissions of
the grantor, made in casual conversations, and detailed
by the witnesses after the lapse of twelve years. Such
admissions, even if competent evidence, are totally insuf-
ficient.—Morgan v. Patrick, 7 Ala. Rep. 185; Lands v.
Crocker, 3 Brevard, 40; Fox v. Reil, 3 Johnson 477;
3 Scammon, 532; Barnard v. Pope, 14 Mass. 434; Wel-
land Canal Co. v. Hathaway, 8 Wendell, 480; Jenner v.
Joliffe, 6 Johns. 22; Hasbrouck v. Baker, 10 Johns. 248;

Jackson v. Miller, 6 Cowen, 751; Jackson v. Vosburgh, 7 Johns. 186; 2 Root, 199; 6 Barr, 59; 2 Southard, 115, 501.

R. W. WALKER, J.—By the agreement of the counsel in this case, our investigation is confined to a single question—namely, whether there is legal proof sufficient to establish a re-conveyance of the land in controversy, by George W. Lore to Seth Lore, re-investing the latter with the title previously conveyed by him to the former.

Ordinarily, the mode of establishing such a re-conveyance would be the production of the deed, and proof of its execution. In this case, no deed was produced; and this devolved upon the complainant the necessity of proving the existence of such an instrument, of satisfactorily accounting for its absence, and of showing its contents. Inasmuch as the deed, if there was any, was made to Seth Lore, the law presumes that it passed into his possession, and remained in his custody. Seth Lore left this State in 1842, or 1843, as a fugitive from justice, and has not since been heard of. These facts, we think, constitute a sufficient excuse for the non-production of the deed.—1 Greenl. Ev. § 558; 4 Phill. Ev. (C. & H.'s ed.) pp. 405–12–13; Cheatham v. Riddle, 8 Texas, 162.

The complainant, however, must not only account for the absence of the deed, but he must also clearly prove its existence as a genuine instrument.—Rhodes v. Seibert, 2 Barr, 18; Kelly v. Hamner, 18 Conn. 317; Young v. Mackall, 4 Md. 362; Mariner v. Sanders, 5 Gilman, 121.

If he succeeds in making this preliminary proof, then he will be permitted to show by parol the contents of the deed. But the evidence of such contents must be pointed and clear: no vague or uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself; and Thompson, J., in Renner v. Bank of Columbia, 9 Wheat. 581, 700, goes so far as to say, that the proof must be so distinct " as to leave no reasonable doubt as to the substantial parts of the paper." Inasmuch as the statute of frauds requires that the conveyance of lands shall be by writing, and makes the writing,

when it can be produced, the only legal evidence of the conveyance, common reason would seem to dictate that, in cases where the written instrument is lost or absent, the proof of its contents should be clear and satisfactory, and such as ·to secure, as far as possible, the safety designed to be given by the written evidence.—United States v. Brittan, 2 Mason, 468 ; Tayloe v. Riggs, 1 Peters, 600 ; Metcalf v. Benthuysen, 3 Comst. 427 ; McBurney v. Cutler, 18 Barb. 203 ; *In re* Gangwere, 2 Harris, 426 ; Mariner v. Sanders, 5 Gilman, 121 ; Dennis v. Barber, 6 Serg. & R. 425 ; 1 Greenl. Ev. § 558, and notes.

In this case, neither the existence, nor the contents of the deed, is attempted to be proved otherwise than by the oral admissions of George W. Lore ; and the *same* admissions are relied upon for the double purpose of establishing at once the execution and the contents of the deed. The counsel for the appellant, it is true, contend that these admissions are corroborated by some other circumstances, such as the relationship of the parties, their comparative pecuniary condition, and the evidence introduced for the purpose of showing a resumption by Seth Lore, about the time when the re-conveyance is supposed to have been made, of some of the lands in controversy ; and in determining the weight to which these declarations are entitled, we have given them the benefit of all the support which we think they ought to derive from these attendant circumstances.

The admissions are proved by David Lore, William S. Paullin, and George L. Barry, whose depositions were all taken in the month of June, 1853. The declarations of George W. Lore, as detailed by these witnesses, were, in substance, " that he had given the property up, the times being hard, and he being unable to make his payments ;" " that he had given all the lands back to Seth Lore ;" " that he had parted with all the rights he had to the land, and to Seth Lore ;" " that he had re-conveyed all the land back to his uncle." It is proper to observe, that the witness who puts the admission in the form last quoted, states that he was the purchaser of some of the lots at the sales made by the sheriff and master under execu-

tions against Seth Lore, and that he has sold all, or nearly all, of the lots so purchased by him; giving, in some instances, quit-claim, and in others warranty-deeds for the same. He is, therefore, interested in the question involved in, though not in the result of this suit. The admission testified to by Barry, was made, according to his statement, in 1841; while those detailed by David Lore and Paullin were made, either about the time of, or (as seems more probable from their evidence) before, George Lore's removal to the country, which it is shown took place in the spring of 1840.

It is insisted that the proof of these admissions is not only sufficient to show that George W. Lore did in fact execute and deliver to Seth Lore a conveyance in writing, but that it serves the additional purpose of disclosing with requisite clearness and certainty the contents of that conveyance. Upon a careful review of the question, we are unwilling to assign to these declarations so extensive an effect.

It is said that admissions, made in casual conversations, are, in general, the weakest and most unreliable of all the grades of positive evidence; and Mr. Greenleaf, speaking in reference to the proof of the contents of writings by the admissions of the parties, observes: "Very great weight ought not to be attached to evidence of what a party has been supposed to have said; as it frequently happens, not only that the witness has misunderstood what the party said, but that, by unintentionally altering a few of the expressions really used, he gives an effect to the statement completely at variance with what the party did actually say."—1 Greenleaf's Ev. § 96; Threadgill v. White, 11 Iredell, 594. It is obvious, too, that the weight to which such evidence is entitled, diminishes in proportion to the length of time which has elapsed since the occurrence of the conversations of which the witness speaks.

Moreover, in determining the effect we ought to give to George Lore's admissions in this case, it is proper to consider, in connection with them, some other circumstances disclosed by the evidence. With some immaterial variety

of expression, the admissions, as detailed by the different
witnesses, are substantially the same; and it is a fair
inference, that when George W. Lore said to Barry, in
1841, that "he had re-conveyed the land to Seth," he was
merely repeating the fact which he had previously com-
municated to David Lore and to Paullin, when he told
them that "he had given the property up"—that he had
"given the land back to Seth," &c. In other words, the
presumption is, that if there was a written conveyance at
all, it was in existence when the conversations took place,
which are testified to by Paullin and David Lore. If this
be not so, then the complainant's whole case, both as to
the execution and the contents of the deed, rests upon
the single admission proved by Barry. George Lore was
arrested upon a charge of murder, in the spring of 1841.
The admissions proved by Paullin and David Lore were
made a year or more before the arrest; and if they estab-
lish a re-conveyance at all, they prove one which must
have been executed either before or about the time of
George Lore's removal to the country, which, as already
stated, took place in the spring of 1840. If this be the
case, then there is nothing in the suggestion made in the
bill, that it was George Lore's arrest which prevented
him and Sheppard from joining in a single deed of re-con-
veyance. But, if we are to suppose that the re-conveyance
from George was not executed until 1841, still it is shown
by the evidence that he was on bail in Eufaula, in 1841,
for from four to six weeks; that Seth Lore was also in
Eufaula during that time, and had frequent opportunities
of transacting business with George; and that when
George Lore went to the north on bail, Seth was also
there. No sufficient reason, therefore, is shown, why
George and Sheppard did not join in a single instrument
of re-conveyance.

The original deed from Seth Lore to George and Shep-
pard was duly recorded. On the 25th October, 1841,
Sheppard executed a re-conveyance to Seth; and this
deed, it is shown, was recorded. If a deed of re-convey-
ance was in fact executed by George Lore, why was it
not also recorded? The original deed from Seth to

George and Sheppard having been registered, there was a manifest propriety in having the re-conveyances put upon the record. There was ample opportunity to do so, whether we are to presume that the deed was executed before George's removal to the country, or in 1841; because Seth Lore was in Eufaula as late as 1842, and, according to one witness, he was there in the fall of 1843. It is also shown, that Seth Lore was, by profession, a land-speculator—that his business was the buying and selling of lands. It is not unfair, therefore, to presume that he was little likely to neglect the precautions usually adopted by persons interested in the transfer of large quantities of real estate; and when we find, as in this case, that he did have recorded the re-conveyance from one of the two grantees, it is difficult to understand why, when he had ample opportunities so to do, he did not also place upon the record the re-conveyance from the other grantee.

At the time the witnesses testified, twelve or thirteen years had elapsed since the conversations took place of which they speak. These conversations appear to have been purely casual. The admissions detailed are certainly couched in vague and indefinite terms. The witness whose evidence is mainly relied on, as proving a declaration by George Lore embodying a statement of the contents of the deed, is, as we have seen, interested in the question involved in this suit. If the admissions were more full and specific, and more clearly and positively identified than they are; still, the consideration of the frailty of human memory, and the uncertainty which, after such a lapse of time, generally attends this description of evidence, might well justify a court in refusing to give them very great weight.

If we were to concede, that the actual existence of a deed from George Lore is satisfactorily established by his admissions, we do not perceive how we could hold that its contents are shown with that clearness which, in such cases, the law wisely requires. The strongest proof for this purpose to be found in the record, is the admission of George Lore to Barry, that "he had *re-conveyed* the land to Seth." Can this admission, waiving all other objec-

tions to it, be deemed sufficient to establish both the *factum* and the contents of the deed? Stretching the words to their utmost capacity, they cannot mean more than that George Lore had executed a certain writing, and that it had the effect of re-conveying the lands to his uncle. So far as such a declaration tends to prove the execution of a deed, it is competent testimony; but the admission of the legal effect of a lost or absent writing is not proof of its contents. The difference is the familiar one between *confessio juris* and *confessio facti*, and is well illustrated by the case of Bloxam v. Elsee, 1 C. & P. 558, where the defendant proposed to prove the declaration of the bankrupt, that by certain deeds an interest in a patent-right had been conveyed by him to a stranger; the evidence was rejected, because it involved an opinion of the party upon the legal effect of the deeds.—1 Greenl. Ev. § 96; see Anderson v. Snow, 9 Ala. 247.

The complainant must prove, not only that George Lore executed a deed, but that such deed transferred the title to Seth Lore; and this transfer of title he must show by exhibiting to the court the contents of the conveyance, and not by the declaration of the grantor that such was its legal effect. The construction and operation of an instrument can be ascertained by the court only by an examination of its provisions, and not by the judgment of either grantor or witnesses as to its effect.—Massure v. Noble, 11 Ill. 531; Dennis v. Barber, 6 S. & R. 425.

It is not necessary, however, either to press, or to decide this point. We prefer to rest our judgment upon the ground, that the admissions of George W. Lore, as proved by the witnesses, do not, under all the circumstances disclosed, satisfy our minds of the double proposition, that there was in fact a properly executed deed from George to Seth Lore, and that the contents of the same have been so clearly and fully exhibited to our view that we are able to declare that it operated a legal re-conveyance of the lands in controversy.

The decree of the chancellor is affirmed.