**HUTCHISON et al. v. MASSIE.  (No. 192.)** *

(Court of Civil Appeals of Texas. Amarillo. Nov. 10, 1920. Rehearing Denied Dec. 22, 1920.)

**1. Appeal and error ⬤⟶1212(4)—On remand from Supreme Court for determination of particular question whole case will not be reopened.**

Where, on reversal of a judgment of the Court of Civil Appeals, the Supreme Court remanded the case for determination of the sufficiency of the evidence not passed on by the Court of Civil Appeals, the case will not be reopened and re-examination of the whole controversy permitted in the Court of Civil Appeals.

**2. Lost instruments ⬤⟶8(3)—Strict proof not required when claim has been long continued and acquiesced in.**

Where there has been a long-continued claim of title by one person asserted in such open manner as to charge the other party with knowledge of the claim, and a corresponding acquiescence by the other party, it may be presumed that the claim originated in a proper conveyance, and strict proof of the execution and contents of the lost conveyance is not required.

**3. Lost instruments ⬤⟶8(1)—Presumption of existence of lost instrument under which title has been claimed is one of fact.**

The presumption in support of a lost conveyance, under which there has been a long-continued claim of title acquiesced in by the adverse parties, is merely one of fact to be considered by the jury in connection with other facts and circumstances.

**4. Lost instruments ⬤⟶8(3)—Strict proof required where taxes were not paid and only claim of title was made privately.**

Where the alleged grantee in a lost deed and those claiming under him paid no taxes on the land for more than 30 years, and the only assertion of a claim of title was to an unidentified section of land in a named county, and was made in private conversations a thousand miles or more away from the land and from those who might be adversaries in the claim so made, there was no presumption in favor of the deed, and clear proof of its execution and contents was required.

**5. Deeds ⬤⟶118—Evidence held insufficient to support finding that deed applied to certain land.**

Evidence, if sufficient to show the existence and destruction of a deed from plaintiff's ancestor to defendant's predecessor, *held* insufficient to support a finding that it covered the section in controversy.

**6. Evidence ⬤⟶78—Voluntary destruction of deed under which title was never claimed strengthens presumption against deed.**

The voluntary destruction of a deed under which title had never been openly claimed by the person alleged to have been named as grantee strengthened the presumption that the deed was insufficient to support the right subsequently asserted under it, if it did not absolutely preclude him and those in privity with him from establishing its contents by parol evidence.

Hall, J., dissenting in part.

Appeal from District Court, Floyd County; L. S. Kinder, Judge.

Action by Rachael L. Hutchison and others against W. M. Massie. A judgment of the Court of Civil Appeals (159 S. W. 315), reversing a judgment for plaintiff, was reversed by the Supreme Court (222 S. W. 962), and the case remanded to the Court of Civil Appeals for further hearing. Judgment of the district court reversed, and cause remanded.

H. C. Randolph, of Plainview, for appellants.

I. W. Stephens, of Ft. Worth, for appellee.

HALL, J. The Supreme Court granted a writ of error in this case to settle the conflict between the decisions of certain courts of the state relative to the duty of a trial judge, when not requested to do so, to give a charge limiting the effect of testimony admissible only for a special purpose. In reversing the decision of this court, the Supreme Court ordered the case returned here for the purpose of having this court determine the question of the sufficiency of the evidence to sustain the judgment for appellee. Upon the return of the papers the appellant moves this court to reopen the case and permit her to resubmit the whole controversy, except as to the one question expressly decided by the Supreme Court.

[1] It is the opinion of the majority of the court (this writer dissenting) that the motion should be overruled, and the question of the sufficiency of the evidence to sustain the judgment below be alone considered. For the sake of brevity we will not again state the issues presented, deeming it sufficient to refer to the former opinion of this court, as reported in 159 S. W. 315, and the opinion of the Supreme Court, reported in 222 S. W. 962. As stated above, the question to be now determined is the sufficiency of the evidence to sustain the judgment of the trial court in favor of appellee, Massie. Appellants, as the heirs of Dr. Jones and wife, are entitled to recover unless appellee acquired the title which it is claimed Jones and wife conveyed to one C. W. Haxton, in 1878, by a deed shown to have been destroyed by the grantee. The evidence with reference to the existence and contents of this deed is entirely circumstantial. That a lost instrument may be proved by parol and circumstantial evidence cannot be denied, but the rule is well settled, by the great weight of authority, that to establish a lost instrument, "which is to constitute a muniment of title, strong and convincing proof of the former existence of such instrument, its loss and its contents, is required." The quantum of proof is variously expressed by the courts, declaring it must be "clear and positive," "clear and certain," "clear and satisfactory," "clear and explicit," clear and convincing," "clear, cogent, and convincing." See Note to Lucas v. Hensley, L. R. A. (N. S.) 1918B, 875, 880. The courts have used this language, which we quote from the note:

"Where the instrument raises to the dignity and importance of a muniment of title, every principle of public policy demands that the proof of its former existence, its loss, and its contents should be strong and conclusive before the courts will establish a title by parol testimony to property which the law requires shall pass only by deed or will. That courts of equity have jurisdiction to set up lost deeds and wills and establish title under them can certainly not be denied; but it is a dangerous jurisdiction, and so pregnant with opportunities of fraud and injustice, that it will not be lightly exercised, nor except upon the clearest and most stringent proof. Thomas v. Ribble (1896) 2 Va. Dec. 321, 24 S. E. 241. * * *

"Evidence of contents of a lost deed must be pointed and clear; no vague or uncertain recollections concerning its stipulations ought to supply the place of the written instrument itself. Shorter v. Sheppard (1859) 33 Ala. 648."

When parol proof of the existence and contents of a lost deed is offered, as the only evidence thereof, the witness must have seen it and read it, and be able to speak pointedly and clearly its tenor and contents, and to state whether it conveys a fee simple, a life estate, or term for years, and whether it in fact was executed by the supposed grantor. Dagley v. Black, 197 Ill. 53, 64 N. E. 275.

"Parol evidence to establish the contents of a lost deed should be clear and certain. It should show that the deed was properly executed, with the formalities required by law. It should show all the contents of the deed, not literally, but substantially. If anything less than these requirements would suffice, evil practices, which it was the object of the statute of frauds to prevent, would be encouraged. Edwards v. Noyes, 65 N. Y. 127."

Elliott on Evidence, vol. 2, par. 1488, says:

"To justify the admission of parol evidence to prove the contents of a deed under the decisions, especially when such proof is exclusively by parol, the following facts must usually be established to the satisfaction of the court: (1) The existence and execution of the original paper as a genuine document; (2) the substance of its contents; (3) its loss or destruction; and (4) absence from the state; or (5) some other satisfactory reason for failure to produce the original."

To the same effect is 2 Jones on Evidence, par. 227.

In the case of Mays v. Moore, 13 Tex. 85, Lipscomb, J., said:

"It is always a question addressed to the discretion of the court to determine whether the basis has been laid, by proving the loss or destruction of a record, to let in proof that such record once did exist. This discretion is not an arbitrary, capricious discretion, but must be a reasonable conclusion from the evidence. But, unless we were fully satisfied from the evidence that the court below erred in the exercise of its discretion, we would not be authorized to reverse its decision. Parol evidence to supply record testimony should be received with great caution. In such cases the temptation to fraud and perjury would be very great, and the difficulty, if not the impossibility, of a conviction for perjury, and of rebutting such evidence, would be an encouragement to an unscrupulous witness."

It was held by Gaines, J., in Shifflet v. Morelle, 68 Tex. 382, 4 S. W. 844, that a witness, who in that case had stated that certain papers were all of that character by which in that day title to land was passed, should not have been permitted to so testify. That

if he did not recollect the contents of the instrument his opinion as to their effect was not admissible.

In 2 Moore on Facts, par. 891, it is said:

"Where a person seeks 'to establish rights under a lost or destroyed instrument, by oral testimony to its contents, his proof must be highly convincing, especially if the right asserted is very valuable. One of the reasons for exacting strong proof is the proverbial frailty of memory in respect of the precise contents of documents. It has been remarked, too, that perjury in this . class of cases is more easily perpetrated and more difficult to detect than forgery would be. It is settled that a lost or destroyed will or other writing may be established by testimony of a single witness deposing from memory, unless a statute requires more than one witness. But as to the testimony of a single witness, who is biased, the Supreme Court of Connecticut said: 'Perhaps it would be too much to say that in no case can the contents of a lost will be established by the testimony of an interested witness, but, if done at all, the case should be a strong one in every other respect.' Even where several biased witnesses concur, courts are likely to be very critical of their testimony."

The same author says (Id. par. 944):

"In case where courts customarily demand highly convincing proof, for example where it is sought to construct by parol evidence a copy of a lost or destroyed record, affidavit evidence would probably be deemed insufficient."

In the light of these authorities, from which we have quoted, we think appellee has failed to establish the contents of the deed, and it is the individual opinion of this writer that the evidence is insufficient to show that C. W. Haxton was ever in possession of a deed to the property in controversy signed by Jones and wife. Only one witness testified that he ever read a paper which he said was a deed. This is Louis A. Layman, the son-in-law of C. W. Haxton, the grantee. He states that he read it on two occasions, and was interested in it because he knew that upon the death of C. W. Haxton the property would descend to his wife, who was Haxton's only daughter, or to their children. Layman was not a lawyer. He does not undertake to state the nature of the instrument further than to say it was a deed to a section of land in Floyd county, Tex. Whether or not the deed expressed any consideration, or contained any conditions or clauses of defeasance, we are not informed. Layman, as the evidence shows, was a teamster, 58 years of age, and was presumably unacquainted with legal instruments. Jerry Haxton, the brother of C. W. Haxton, the grantee, upon this issue testified as follows:

"My half-brother, in his lifetime, claimed that he owned some land in Texas, and about 1882 he showed me a paper which he said was for a piece of Texas land, and that some day it would be worth something, but that it was not worth very much now. I started to take the deed and read it, and had one hand on the paper, when, for some reason, he took it away from me and folded it up and put it away with his papers so that I didn't get to read the deed, and did not know anything about the description of the land, nor in what county it was located, nor who deeded it to him. I .never saw the deed but once after that, and that was about three or four years before he died. At that time, at the place where we were living together, one evening he had a number of papers in his hand, and stated that he was going to burn all the papers that he had. Three or four days after that occurrence I asked him what he had done with the Texas deed, and he said, 'Ashes tell no stories,' and that was all that was said about it."

The other witness, Samuel Robinson, upon this issue testified:

"In 1886 Haxton owed me a little bill of seven or eight dollars, and I asked him to pay me. He first said that he had some furniture in his rooms over the First National Bank that he would turn over to me to pay the bill, and I went to the rooms to look at the furniture. While we were in his room looking at the furniture he remarked that he had some Texas land that he had gotten from Dr. Jones, and believed that he could sell or dispose of it in some way, and that he would like to pay the debt by the money he could raise from the land rather than to turn over the furniture to me. He then remarked that in order to prove to me that he was not joking about the Texas land nor trying to deceive me about it, that he could show me a deed for the same, and he went to his papers and took out a paper with the remark that it was the deed for his Texas land. I took the paper in my hand and looked at it, but I could not read it because I didn't happen to have my glasses with me and my eyes were then poor, and I handed it back to him, remarking that I didn't doubt his honesty or truthfulness, but that I wanted the little account settled now, and that I could use the furniture, and again requested him to let me have that to settle the bill. He did so, and I took the furniture and that was the end of the matter.".

It will not be controverted that this falls far short of the quantum of proof necessary to establish a lost deed constituting a muniment of title.

The rule is announced by our Supreme Court in the case of Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, that incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record, without objection; and, "when the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sus-

tain or deny a material issue in a case." The evidence of Jerry Haxton, and of the witness Robinson, in which they testify that C. W. Haxton told them that the paper which he had in his hands at that time was a deed to Texas lands, is hearsay of the most pronounced type. It is also further inadmissible upon the ground that it was a self-serving declaration. It was not admissible under any of the exceptions to the hearsay rule of which we are cognizant. Such declarations by a grantee have been admitted in a few cases to show a claim of title, and when coupled with possession, payment of taxes, exercise of the acts of ownership, and recitals in ancient instruments have been admitted and considered by the courts as competent evidence. The question of whether a contract relating to land is a deed, a bond for title, an executory undertaking or other evidence of inchoate title, primarily is one of law. No possession was shown by C. W. Haxton or any one claiming under him, and his title, if any, was not acquired by appellee until immediately before the trial of the case. In Mills v. Herndon, 60 Tex. 356, our Supreme Court said:

"Where a party, under a lost or destroyed deed, has exercised acts of ownership and control under it, after a great lapse of time strict proof is not required to establish its existence, contents, and subsequent loss. * * * But where the party claiming under such lost or destroyed deed has permitted a great lapse of time without asserting ownership and control over the property, before he can have title to the land, duly authenticated by written evidence, set aside or vacated on the assumption of the previous lost deed, he must deduce clear proof, not only of the existence and execution of the purported deed, but also so much of its contents as will enable the court to determine the character of the instrument."

C. W. Haxton never paid any taxes, or even rendered any land in Floyd county for taxation; nor did he value his alleged deed enough to have it recorded. We conclude that the evidence of Jerry Haxton and Robinson was incompetent and inadmissible. The fact that Layman was an interested witness, and ignorant of the requisites of a deed, materially weakens the force and effect, if not the credibility, of his testimony. 2 Moore on Facts, pars. 799, 929, and 930. Appellee endeavored to strengthen his case upon this point, first by introducing the will of Joseph Jones, showing that the land in question had not been mentioned by the testator. He also introduced the inventory and appraisement, showing that the land was not listed by the executor. Deeds were introduced partitioning and disposing of five sections of land owned by one Garshwiler and Dr. Jones, one section of which was the land in controversy, and they showed that Jones owned two sections when this deed was signed by him. A certified copy of the notarial record of Julius Royer, a Dallas county notary, was also introduced, showing in the column headed "Location of Land and Original Grantee" this entry: "Floyd county, H. A. and J. L. King." In the column headed "Grantor and Residence" is this entry: "Joseph Jones, Anne E. Jones, Dallas." The notary's record further recites that the grantors were personally known to him; that the acknowledgment by Anne E. Jones was dated January 28, 1878," and that of Joseph Jones was dated January 14, 1878, and that the name and residence of the grantee was C. W. Haxton, Attica, Ind. The record does not show that the instrument which was acknowledged by Joseph Jones, January 14th, and by Anne E. Jones, January 28, 1878, was in fact a deed. It may be inferred that the instrument related to land in Floyd county, originally granted to H. A. and J. L. King, but whether a section or five sections, or less than a section, does not appear. It was shown that no land had originally been granted to H. A. and J. L. King, in Floyd county, but that five sections had been granted to H. A. and J. L. Cagle. We might base a presumption upon this proof that the notary erroneously wrote King instead of Cagle as the original grantee. Aside from an utter absence of any description of land whatever, the notary's record gives us no information as to the character of instrument nor the consideration. This is certainly not such clear, convincing, positive, and cogent proof of the execution and contents of a lost instrument as is required by the courts. Jerry Haxton's testimony, in which he attempts to prove the destruction of the deed, we think is a serious obstacle to appellee's right to recover. According to his statement, C. W. Haxton deliberately and voluntarily destroyed the instrument claimed to be a deed. His only explanation of his act was that "ashes tell no stories." Without an explanation upon his part, the maxim "Omnia præsumuntur contra spoliatorem" applies. If C. W. Haxton were living and a party to this suit, he would not, under the law, be allowed to introduce secondary evidence of the existence and contents of the deed until he had by evidence relieved himself of the force of the presumption which the maxim attaches to one who voluntarily destroys written evidence and endeavors to prove its contents by parol. It is said in 2 Enc. of Ev. pp. 319–320.

"It is not a matter of course, however, that secondary evidence of the contents of a writing may be received upon proof of its loss or destruction; if the destruction was voluntary and deliberate by, or was done with the consent of, the party seeking to resort to secondary evidence, the admissibility of the secondary evidence will depend upon the cause or motive of the party in effecting or consenting to the de-

struction of the primary evidence. The naked fact of voluntary destruction is generally held such presumptive evidence of fraudulent design as to preclude all secondary evidence, unless the party affirmatively shows that the destruction was not from an impure motive, and repels every suspicion of such fraudulent design, in the absence of which the presumption becomes conclusive."

The rule here announced is extended to assignees and to those claiming in privity with the destroyer. Smith v. Truebody, 2 Cal. 341; Mills v. Herndon, supra; Ricks v. Wofford, 31 Tex. 411; Blade v. Noland, 27 Am. Dec. 126, and note; Cheatham v. Riddle, 8 Tex. 162; Count Joannes v. Bennett, 5 Allen (Mass.) 173, 81 Am. Dec. 738; Riggs v. Tayloe, 9 Wheat. 483, 6 L. Ed. 140; Anglo-American P. & P. Co. v. Cannon (C. C.) 31 Fed. 313; Bagley v. McMickle, 9 Cal. 430. When asked his reason for destroying the deed, we think the answer of C. W. Haxton, if not conclusive, is strongly convincing upon this question. It is inconceivable that a man in moderate circumstances, in fact so poor that he could not pay a board bill amounting to $7 or $8, except by using the furniture in his room for that purpose, should deliberately and voluntarily destroy an unrecorded deed, which conveyed to him in fee simple an entire section of land. His statement that "ashes tell no stories" implies that it was not an absolute deed; that a perusal of its contents would have convicted him of falsehood before those to whom he had asserted he had a deed, or he hoped by destroying it after Jones' death to be able by parol proof to establish the fact of a conveyance. We think the presumption precludes him from doing so. At least the dearth of proof tending to show that this particular section of land had ever been conveyed to him renders the appellee's evidence so vague, uncertain, and unsatisfactory as to be insufficient to support the verdict. Mutual Life Insurance Co. v. Tillman, 84 Tex. 31, 19 S. W. 294; Nichols v. Kingdom Iron Ore Co., 56 N. Y. 618; Propst v. Mathis, 115 N. C. 526, 20 S. E. 710; Paige v. Loring, 18 Fed. Cas. No. 10672; Kimball v. Morrell, 4 Greenl. (Me.) 368.

The judgment is therefore reversed and the cause remanded.

BOYCE, J. It seems to me that some of the statements made in the foregoing opinion, by Judge HALL, as to the admissibility of the evidence of Jerry Haxton and Samuel Robinson are in conflict with the former opinion of this court on motion for rehearing, and the disposition of the assignments, based on this testimony, as made by the Supreme Court. I, however, agree to the reversal of the case on the ground that under the particular facts of the case the appellee, claiming under the alleged deed from Joseph Jones to C. W. Haxton, was bound to furnish clear proof of the existence of such instrument, and its contents, and that the proof falls short of this requirement, particularly in respect to the description of the property conveyed by the deed, to the existence of which the witnesses testified.

While most of the facts of the case relied on by the appellee in support of the finding of the jury on this issue are stated either in the foregoing opinion or in the former opinions of this court in this case, I think a clearer understanding of the situation may be had from a condensed and connected restatement of such facts: Dr. Joseph Jones came to Texas from Indiana about 1875. Soon after that time C. W. Haxton, who had formerly worked for Dr. Jones in Indiana, also came to Texas, and worked for Dr. Jones as stableman for a year or two, returning to Attica, Ind., where he lived until his death, in 1902. In May, 1877, Joseph Jones and W. I. Garshwilder acquired title to sections 109, 111, 113, 115, and 117, H. A. and J. L. Cagle original grantees, in Floyd county, Tex. They conveyed, by joint deed, section 115 to John Weir, and then by exchange of deeds divided among themselves the other four sections, Dr. Jones thus securing title to sections 109 and 117. In 1878 Dr. Jones conveyed section 117 to Y. B. Dean. So far as the record title is concerned, he never conveyed section 109, and died owning it; and in 1910 his heirs brought suit against W. M. Massie, the appellee, to recover the land. Dr. Jones during his lifetime did not pay taxes on said section 109; it was not listed in the inventory of the property belonging to his estate; and there is no evidence of any ostensible claim of ownership of the section made by him or his heirs until about the time of the institution of this suit, it appearing that the heirs a short while before such time had been informed that the record title of this land appeared to be in Dr. Jones. After the return of C. W. Haxton to Attica, Ind., and as early as 1882, and at various times up to a short while before his death, the said Haxton stated to various persons that he owned some land in Texas. In 1886 he exhibited to Samuel Robinson a paper, which he said was a deed to him from Dr. Jones. In 1882 he exhibited an instrument to his half-brother, Jerry Haxton, which he said was a deed to a section of land in Texas, but did not allow the said witness to read it. This witness also testified that C. W. Haxton a few days before his death, in 1902, got out some papers, and said he was going to burn them, and, when afterwards asked about the Texas deed, replied, "Ashes tell no story." Louis A. Layman, Haxton's son-in-law, testified that Haxton lived with his family for several years, and on numerous occasions referred to his ownership of

some land in Texas; that in 1879, and again in 1884, the said Haxton exhibited to the witness an instrument which the witness read and described as a deed from Joseph Jones and wife to the said Haxton to a section of land in Floyd county, Tex. The witness could give no further description of the land as contained in the deed. The deed conveying section 117 to Y. B. Dean was dated and acknowledged January 17, 1878, while the instrument, whatever it was, referred to in the notarial record of Julius Royer, was dated January 14th, but the acknowledgment of the wife of Dr. Jones was not taken until January 28, 1878. As stated by Judge HALL, this notarial record merely shows the execution and acknowledgment of some instrument by Joseph Jones and wife, the land merely being described as being located in Floyd county, Tex., with H. A. and J. L. King grantees. Neither C. W. Haxton nor any of his heirs ever paid any taxes on the land or made any other tangible assertion of claim to the property until after the institution of this suit, when, in 1911, they conveyed the land to W. M. Massie, the defendant.

[2, 3] In considering the sufficiency of these facts to establish the existence and contents of a deed from Dr. Jones and wife, whereby they conveyed the land to C. W. Haxton, we must bear in mind the distinction between those cases, in which some presumptions may be indulged in favor of the conveyance, and those in which strict proof is required of the execution and contents of the lost or destroyed instrument. In those cases where there has been a long-continued claim of title by one person, asserted in such open manner as to charge the other party with knowledge of the claim, and there has been a corresponding acquiescence by the other party in the claim, it may be presumed that the claim originated in a proper conveyance, and strict proof of the execution and contents of such conveyance is not required. Taylor v. Watkins, 26 Tex. 688; Herndon v. Vick, 89 Tex. 469, 35 S. W. 143; Fletcher v. Fuller, 120 U. S. 534, 7 Sup. Ct. 667, 30 L. Ed. 763. A very extended discussion of the reasons for this rule and its limitation will be found in the decision of the Supreme Court of this state, first cited, and that of the Supreme Court of the United States, to which decision our courts frequently refer with approval. It was said by the Supreme Court of the United States in the case referred to that "it is not necessary in the cases mentioned for the jury, in order to presume a conveyance, to believe that a conveyance was in point of fact executed. It is sufficient, if the evidence leads to the conclusion, that the conveyance might have been executed, and that its existence would be a solution of the dif-

ficulties arising from its nonexecution." In Texas the presumption, in aid of the right asserted as I have stated it, is merely one of fact to be considered by the jury, in connection with the other facts and circumstances of the case. Taylor v. Watkins and Herndon v. Vick, supra.

[4] But the facts in this case are not sufficient to enable those claiming under C. W. Haxton to invoke the benefit of any presumptions in their favor. Baldwin v. Goldfrank, 88 Tex. 249, 31 S. W. 1066; Magee v. Paul, 221 S. W. 256–257. In the case first cited the Supreme Court said:

"In many courts it is held that proof of possession under the deed is necessary in order to establish such presumption. The rule that a deed or a power may be presumed after a long lapse of time is not an arbitrary one. It does not rest upon any consideration of public policy with reference to quieting titles to property. It has its just foundation in the principle that long and continuous acts of ownership, acquiesced in knowingly by those who hold an apparently adverse title, lead to the conclusion that the persons so exercising such rights have acquired the title. Since possession is the most indubitable act of ownership which can be exercised by a claimant of land, it would seem, in a country where there are no unoccupied lands, it is reasonable to hold that, without such proof of possession, the presumption of the grant will not be allowed. In a country, however, where much of its lands are unoccupied, a different rule should prevail; and therefore it has been held in this state, as in many others, that possession is not indispensably requisite to the presumption. Garner v. Lasker, 71 Texas, 441, 9 S. W. 332, and cases cited. In the case here cited there was payment of taxes under a deed purporting to have been executed by virtue of a power of attorney, besides other acts showing a continuous claim to the land, and it was held that the power might be presumed. That case, in our opinion, was decided correctly; but my recollection is that the court regarded it, as we now regard it, as pushing the doctrine to the very verge of authority. * * * The presumption of a grant or of a power from claim of ownership upon one side, and an acquiescence upon the other, rests rather upon the acquiescence of the latter than upon the claim of the former. Without proof of some unequivocal acts of ownership, long continued, and brought home to the adverse party, acquiescence in the claim cannot be established. The case presented is that of a deed which purports to have been executed by virtue of a power of attorney, and which, it is true, is forty years old, but under which no claim appears to have been asserted for a quarter of a century. The presumption would seem to be, not that the power did in fact exist, but rather that it did not exist, or that, for some other reason not disclosed, no title passed by the deed."

Haxton and those claiming under him paid no taxes on this land for more than 30 years; the only assertion of claim of title

was to some section of land in Floyd county, but this claim was made in private conversations, a thousand miles or more away from the land and those who might be the adversaries in the claim thus made. The presumption, then, instead of being in favor of a deed to this land, is the other way, and, as stated by the court in the case of Mills v. Herndon, 60 Tex. 357, the defendant was required to furnish clear proof of the execution of the deed and its contents.

[5] If we admit that the evidence is sufficient to show the existence and destruction of a deed from Dr. Jones, conveying to C. W. Haxton a section of land, with the grantee therein described as H. L. and J. L. King, in Floyd county, Tex.—and I am inclined to think the evidence is sufficient to warrant the finding of such fact—yet the conclusion that such deed described section 109, H. L. and J. L. Cagle, grantees, so as to identify and convey it, would have to be based on the presumption that since the grantor, Jones, had already disposed, or was contemporaneously therewith disposing, of the only other section of land owned by him in Floyd county, he intended to convey to Haxton the remaining section, 109, and that the deed was so drawn as to carry this intention into effect. I do not think we are warranted in indulging these presumptions in aid of the deed. I concede that the evidence leads to the conclusion that the conveyance might have, and probably did, name section 109 as the property conveyed therein, but I do not think this meets the requirement of proof in this kind of case. Tayloe v. Riggs, 1 Pet. 591, 7 L. Ed. 279; Capell v. Fagan, 30 Mont. 507, 77 Pac. 55, 2 Ann. Cas. 37, and authorities cited; Enc. of Ev. vol. 4, p. 216 et seq.; Id. vol. 8, p. 357; in addition to the authorities referred to by Judge Hall. The court said in the case of Tayloe v. Riggs, supra, that—

"When a written contract is to be proved, not by itself, but by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily; and, if that cannot be done, the party is in the condition of every other suitor in court who makes a claim which he cannot support. When parties reduce their contract to writing, the obligations and rights of each are described and limited by the instrument itself. The safety which is expected from them would be much impaired if they could be established upon uncertain and vague impressions made by a conversation antecedent to the reduction of the agreement."

In that case it was held that the testimony of a witness to whom the terms of an agreement were stated before it was reduced to writing was not sufficient to establish that such agreement was actually embodied in the writing. Testimony of such character might, of course, render it probable that the contents of the instrument as written in fact were as contended by the claimant under the lost instrument; but as held by the court in that case, and in numerous other authorities to which reference is made, testimony of such character is not sufficient to supply the contents of the lost instrument itself, except in those cases where some presumptions may be invoked in aid of the right asserted under the instrument.

All of the many fact cases cited by appellee in support of the sufficiency of the evidence in this case are cases in which the claimant made some tangible assertion of ownership, acquiesced in by the other party, so as to be entitled to the benefit of the rule of presumption referred to. It is true that the courts in many cases of this kind have said that after a long lapse of time the law, recognizing the frailty of human memory, will be more lenient as to the character of proof required to establish the existence and contents of an instrument executed and lost many years ago than if the facts were of recent occurrence. But these statements must be confined to the character of cases in which they were made, for, where there has been no tangible assertion of claim for many years, every rule of reason and regard for the safety of record titles would require clear proof in support of a claim, the assertion of which had been so long delayed, and the lapse of time, instead of relieving the burden upon the claimant, should rather add to it.

[6] The voluntary destruction of the deed by Haxton, if it did not absolutely preclude him and those in privity with him from establishing its contents by parol evidence, would certainly tend to strengthen the presumption that the deed was insufficient to support the right now asserted under it.

These considerations lead me to conclude that the evidence in this case is not sufficient to support the finding of the jury on this issue.

I am authorized to say that Chief Justice HUFF concurs in these views.